Olan HANKINS, Plaintiff,

v.

**DALLAS INDEPENDENT SCHOOL DISTRICT, the Board of Trustees of the Dallas Independent School District, Leonard Clegg, Kathhlyn Gilliam, Robert Medrano, Robert Hester, Richard Curry, Howard Driggers, Don H. Hicks, John Martin and Mary Rutledge, Defendants.**

No. CA 3–85–1921–T.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 31, 1988.

Frank Hill, Ann Soward, Marcia Wise, Hill, Heard, O'Neal, Gilstrap & Goetz, Arlington, Tex., for plaintiff.

Allen Butler, Mark A. Shank, Clark, West, Keller, Butler & Ellis, Dallas, Tex., for defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

MALONEY, District Judge.

On June 8, 1987 Defendants filed their Motion for Summary Judgment. Plaintiff filed his response on July 30, 1987 and Defendants filed a reply on September 25, 1987.

The Court, having considered the Motion, supporting argument and record before the Court, is of the opinion that the Motion should be granted.

Defendants urge the Court to grant summary judgment on the following issues of law:

1. Whether Plaintiff states a claim for relief under the 5th Amendment to the United States Constitution;

2. Whether Plaintiff had a property interest in continued or renewed employment with Dallas Independent School District ("DISD" or "the District") after resigning

his employment as a teacher on February 28, 1983, effective March 25, 1983;

3. Whether DISD violated any liberty interest of Plaintiff by accepting his resignation and classifying it as a "Code 60" thereby requiring DISD's Assistant Superintendent for Personnel to determine the advisability of reemploying Plaintiff if he subsequently sought reemployment;

4. Whether Plaintiff has been foreclosed from other employment opportunities;

5. Whether, assuming Plaintiff had a protectable property or liberty interest, DISD acted arbitrarily and capriciously with regard to those interests so as to violate Plaintiff's right to equal protection under the United States and Texas Constitutions;

6. Whether Plaintiff has raised a genuine issue of material fact as to any of its underlying constitutional causes of action, which is a necessary prerequisite to a claim under 42 U.S.C. §§ 1983 and 1985;

7. Whether, as to his claim under 42 U.S.C. § 1985, Plaintiff has raised a genuine issue of material fact concerning the existence of a conspiracy as required by section 1985 and the existence of a "class based" animus as required by section 1985;

8. Whether Plaintiff and DISD mutually rescinded and terminated the teaching contract entered into on March 19, 1982; and,

9. Whether Plaintiff states a cause of action under the Texas Open Records Law.

### Undisputed Facts

Plaintiff Olan B. Hankins ("Hankins") was hired by the District under a one year probationary contract in August 1980. Plaintiff was assigned to teach physical science at Roosevelt High School, and in April 1981 was offered an additional one

year contract by the District. On March 19, 1982 Plaintiff entered into a fixed term contract of employment with DISD as a full time teacher. The contract was to commence the first day of the 1982–1983 school year and continue for three years.[1] The contract provides that it may not be terminated by the teacher without written DISD approval.[2]

On February 14, 1983 Defendants received Plaintiff's request for a leave of absence during the period of April 4, 1983 through May 27, 1983. Plaintiff's reason for requesting leave was to teach German at the college level at Principia College in Elsah, Illinois.[3] Edward L. Cowens, DISD's Administrator of Personnel Services, denied Plaintiff's request for leave of absence in a letter dated February 15, 1983. The denial was based on DISD's lack of policy regarding the approval of leave of this type. The denial was further based on the DISD's opinion that approving such a request would be detrimental to Plaintiff's students.[4]

Plaintiff requested that Edward L. Cowens reconsider his position. DISD's position remained unchanged.[5] Plaintiff accepted employment with the Principia College to serve as a visiting associate professor for the Spring Quarter, which was held March 28, 1983 through June 1, 1983. After Plaintiff's request for reconsideration was denied, he tendered his resignation to DISD, which was received by the District on March 3, 1983.[6]

On March 14, 1983 Plaintiff received an evaluation from his principal, Charles L. Fisher. Plaintiff was evaluated as overall "successful" and recommended for reemployment. On March 25, 1983 Plaintiff's request for resignation was accepted by Edward L. Cowens. That same day, principal Charles L. Fisher completed Plaintiff's termination evaluation, stating that Fisher

---

1. Plaintiff's Second Amended Complaint, at 3–4.

2. Defendants' Exhibit B to Motion for Summary Judgment, ¶ 7.

3. Plaintiff's Second Amended Complaint, at 3; Exhibit D to Defendants' Motion for Summary Judgment.

4. Defendants' Motion for Summary Judgment, Exhibit E.

5. Defendants' Motion for Summary Judgment, Exhibit F and Exhibit G.

6. Defendants' Motion for Summary Judgment, Exhibits C, H, and I.

recommended Plaintiff's not being rehired because "he chose to resign his position in the middle of the school year leaving our students without a certified science teacher." [7]

Assistant Superintendent of Personnel Services, John Santillo ("Santillo"), accepted Plaintiff's resignation and classified it as a Code 60, indicating that Plaintiff was administratively released.[8]

Plaintiff reapplied to DISD for employment as a full time teacher on September 15, 1983. He also interviewed with the Plano and Richardson Independent School Districts.[9] Plaintiff applied with DISD for work as a substitute teacher. Assistant Superintendent Santillo refused Plaintiff's request.[10]

Plaintiff subsequently sought the assistance of Harley Hiscox, President of United Teachers of Dallas. Plaintiff was able to obtain a meeting with Deputy Superintendent Otto Fridia. Plaintiff was ultimately rehired by DISD beginning in the 1984–1985 school year. Plaintiff has been employed with the District since that time.[11]

### Fifth Amendment Claim

Plaintiff alleges that Defendants violated his Fifth Amendment rights by depriving him of property and liberty interests protected by the Fifth Amendment to the U.S. Constitution. That is, Plaintiff claims he has a property interest in continued or renewed employment with the district.[12]

Defendants argue that Plaintiff's claim under the Fifth Amendment must fail because there is no allegation of federal action. The Court is directed by *Rodriguez v. Carroll*, 510 F.Supp. 547 (S.D.Tex.1981), which found:

It was established long ago that the Fifth Amendment applies to and restricts only the activities of the federal government and not those of private persons.

At 550. The Court also recognizes the Fifth Circuit's holding in *Rutherford v. United States*, 702 F.2d 580 (5th Cir.1983). The Fifth Circuit has held that causes of action arising under the Fifth Amendment relate to actions by the federal government, not state officials or private persons.[13]

■ As Plaintiff's complaint is devoid of allegations implicating federal officials for actions causing harm to Plaintiff, the Court is of the opinion that Plaintiff's Fifth Amendment claim cannot be sustained. The Court therefore finds that summary judgment in favor of Defendants is appropriate on this issue.

### Fourteenth Amendment Claim—Property Interest

Plaintiff alleges that he was unconstitutionally deprived of his property interest in continued or renewed employment as a school teacher, without procedural due process of law and without substantive due process of law in violation of the Fourteenth Amendment.[14]

Specifically, Plaintiff contends that after his resignation on February 23, 1983, he had a property interest in continued or renewed employment. Defendants assert that Plaintiff's resignation negated any

---

7. Defendants' Motion for Summary Judgment, Exhibit I; Plaintiff's Response, Exhibits P and Q.

8. Defendants' Motion for Summary Judgment, Exhibits I and J. A Code 60 falls under a category of administrative releases, which the District uses when an employee has requested termination but has not fulfilled his contract obligations. The definition of Code 60 reads: Administrative Release (to be used at the discretion of the Assistant Superintendent–Personnel). The District to review the file carefully and consult with the Assistant Superintendent–Personnel to determine the advisability of re-employment.

9. Hankins Deposition, at 98–99 and 111–113.

10. Santillo Deposition, at 86–87; Hankins Deposition, at 122.

11. Defendants' Motion for Summary Judgment, Exhibit P.

12. Plaintiff's Second Amended Complaint, at 6.

13. *Rutherford*, at 582, n. 4.

14. Plaintiff's Second Amended Complaint, at 6.

property interest that he might have in reemployment by DISD. Defendants further contend that as DISD has a fixed-term contract policy, Texas state law negates any claim of a continued property interest.

To establish that he has been denied due process of law under the 14th Amendment, Plaintiff must show that he had a protected property interest in continued employment or that nonrenewal of his contract deprived him of a liberty interest. *Wells v. Hico Independent School District,* 736 F.2d 243 (5th Cir.1984).

It is well settled that property interests are created by contract. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiff was initially employed by DISD on a probationary contract basis in 1980. In 1982, however, Plaintiff entered into a fixed term contract of employment with DISD. DISD operates under a fixed term contract policy provided by Texas Education Code § 23.28.[15] The contract which Plaintiff signed with DISD "creates a property interest in the position only for the period of time stated in the contract. Such a contract creates no property interest of any kind beyond the period of time stated in the

contract."[16] The Court finds that when a school district adopts a fixed term contract policy, it does not create an implied expectation of continued employment beyond the term of the contract. *Wells v. Hico Independent School District,* 736 F.2d 243 (5th Cir.1984).

■ The record reflects that Plaintiff resigned his employment in February 1983. The Court finds that as a matter of law, Plaintiff resigned his employment prior to the end of the contract term, was released from his employment, and cannot therefore claim a property interest in the fixed term contract which he executed and terminated.[17]

The Court further finds that Plaintiff's assertion that he has an expectation of reemployment based on a DISD policy which entitles former employees to reemployment, is unfounded under the holding in *Wells v. Hico Independent School District.* That is, a school district may not operate under both a continuing contract policy and a fixed-term contract policy. To find that Plaintiff has a property interest in continued employment would require this Court to give no effect to DISD's fixed term contract policy.

---

15. Tex.Educ.Code § 23.28 provides:
   (a) The board of trustees of any independent school district may employ by contract a superintendent, a principal or principals, teachers, or other executive officers for a term not to exceed the maximum specified in this section.
   (b) In those independent school districts with a scholastic population of fewer than 5,000, the term of such contracts shall not exceed three years.
   (c) In those independent school districts with a scholastic population of 5,000 or more, in the last preceding scholastic year, the term of such contracts shall not exceed five years.
   (d) All 12 month contracts made with employees above-mentioned shall begin on July 1 of the year beginning the contract and end on June 30 of the year terminating the contract.
   (e) This section does not apply to teacher's contracts in those independent school districts which have adopted the provisions of the probationary or continuing contract law as set out in Subchapter C, Chapter 13 of this code.

16. Defendants' Exhibit A to Motion for Summary Judgment, excerpt from Dallas Independent School District *Policies and Procedures Manual,* at 1.

17. *Wells v. Hico Independent School District,* at 252–255. See also, *Burris v. Willis Independent School District,* 537 F.Supp. 801 (S.D.Tex.1982). In *Burris,* the plaintiff sued when the school district decided not to renew plaintiff's contract of employment. Plaintiff argued that he possessed a property interest in continued employment and was deprived of that right. The court found that *Hix v. Tuloso–Midway Independent School District,* 489 S.W.2d 706 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd. n.r.e.) is the controlling Texas case on the issue. The *Burris* court found:

   That case [*Hix*] held that several prior renewals of a teacher's contract coupled with an admission by a school official that it was district policy to retain employees who performed satisfactorily, did not establish a de facto tenure policy or a job property interest. The court held instead that employment rights were determined under the written policies of the district, and that state law (Tex.Rev.Civ.Stat.Ann. art. 2781, current version at Tex.Educ.Code Ann. § 23.28), in fact, prohibited any expectation of employment beyond the stated term of each written contract.
   *Burris,* at 804.

### Fourteenth Amendment
### Claim—Liberty Interest

Plaintiff contends that Defendants unconstitutionally deprived him of his liberty interest in that Defendants allegedly stigmatized Plaintiff by placing false and inaccurate information in his personnel file and distributing this information to prospective employers.

Plaintiff complains that Defendant Santillo classified Plaintiff's resignation as a Code 60, indicating that Plaintiff was administratively released. Plaintiff contends that this classification damaged his reputation and his ability to take advantage of other employment. Specifically, Plaintiff alleges that DISD informed potential employers that Plaintiff broke his teaching contract with DISD at a critical point in the school year.[18]

▇ The Court is of the opinion that to establish that he has been deprived of a liberty interest, Plaintiff must show that DISD brought false charges against him that "seriously damage[d] his standing and associations in his community" or that imposed a "stigma or other disability" that foreclosed his "freedom to take advantage of other employment opportunities." *Campos v. Guillot*, 743 F.2d 1123, 1125 (5th Cir.1984), citing *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

In *Campos*, the 5th Circuit held, "for a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to 'a badge of infamy, public scorn, or the like.'" *Campos*, at 1125–26, citing *Ball v. Board of Trustees of Kerrville Independent School District*, 584 F.2d 684 (5th Cir.1978).

The record reflects that the administrative code placed on Plaintiff's personnel file was placed there to indicate the circumstances of Plaintiff's leaving the DISD. There is no summary judgment evidence to indicate that this was done with the intention of never accepting Plaintiff for employment again. The notation was made for the use of the Assistant Superintendent of Personnel to make decisions on the desirability of rehiring Plaintiff. The Court finds that the placing of this information in Plaintiff's file does not reach the level of stigmatization as contemplated by *Campos*. The Court therefore finds that summary judgment in favor of Defendants on this issue is appropriate.

### Foreclosure of Other Employment
### Opportunities

Plaintiff contends that the information contained in his file regarding his administrative release constitutes information, that if given to prospective employers, will operate to foreclose Plaintiff's ability to take advantage of other employment opportunities.

▇ The Court finds no summary judgment evidence to support Plaintiff's contention that stigmatizing information was released to prospective employers.[19] The evidence presented on this issue is comprised of Plaintiff's speculation that DISD may release such information, which would operate to Plaintiff's detriment. The record further reflects that Plaintiff interviewed with the Plano and Richardson Independent School Districts. Neither school offered Plaintiff employment, but each informed him that his application would be kept in the event a vacancy in his field became available.[20] The Court is of the opinion that this evidence does not raise a fact issue as to whether DISD's actions resulted in defamation of Plaintiff's reputation or foreclosed his ability to obtain other opportunities for employment.[21]

The Court therefore concludes that Plaintiff was not foreclosed from other employment opportunities, and finds that summa-

---

18. Plaintiff's Second Amended Complaint, at 3–4.

19. Deposition of Olan Hankins, at 111–113, Defendants' Motion for Summary Judgment, Exhibit O.

20. Defendants' Motion for Summary Judgment, Exhibit O, at 106 and 111–113.

21. See *Hampton v. Mow Sung Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976).

ry judgment in favor of Defendants on this issue is appropriate.

### DISD's Actions as Arbitrary and Capricious

Defendants, in their motion for summary judgment, argue that even if the Court were to assume that if Plaintiff has established a protectable property or liberty interest, then the Court, nevertheless, should find that DISD did not act arbitrarily and capriciously with regard to these interests, in violation of Plaintiff's equal protection rights under the United States and Texas Constitutions.

The Court finds that Plaintiff's equal protection claim under the Texas Constitution should be decided under substantially the same guidelines as an equal protection claim under the United States Constitution.

Plaintiff contends that Defendants have imposed arbitrary and capricious measures on him but not on others similarly situated. Specifically, Plaintiff contends:

It was the policy, practice and custom of DISD to 'blacklist' teachers situated as was Plaintiff. Further, Plaintiff would show unfettered discretion was delegated to the Personnel Director as policy maker regarding personnel decisions for DISD.

Plaintiff alleges that Defendant's above-described conduct is violative of Plaintiff's right of equal protection under both the Fourteenth Amendment of the U.S. Constitution and Art. I, Sec. 3 of the Texas Constitution in that Defendants have imposed arbitrary and capricious measures on Plaintiff, but not others similarly situated, without a rational basis or compelling reason for such discrimination. Such violations of Plaintiff's right to equal protection included but was not limited to the Defendant's actions in arbitrarily differentiating between applicants for rehire, in that some persons who terminated contracts through resignation were considered for re-employment by Defendant, while Plaintiff and others who terminated contracts by resignation were not considered.[22]

Plaintiff contends that the Code 60 classification placed in his personnel file effectively amounted to a "blacklisting" of Plaintiff, which precluded Plaintiff from benefitting from an alleged DISD policy of rehiring former employees. Plaintiff contends that such an action was arbitrary and capricious, and violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

The Court finds that analysis of an equal protection claim must be made based on one of two tests, which are mutually exclusive. The first test is the rational relationship test, which requires that the challenged legislation or policy be examined, and that it bear some rational relationship to a legitimate state interest. The second test is the compelling state interest or strict scrutiny test, which requires a court to strictly scrutinize the challenged legislation or policy as it may affect an individual or class of individuals. This test also requires strict scrutiny of the challenged legislation or policy as to whether it may affect a suspect classification or fundamental right. Suspect classifications are those based on race, ancestry or alienage. Fundamental rights are defined as the right to privacy, vote, travel, procreate, and First Amendment rights. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

The Court is of the opinion that Plaintiff has not shown himself to be a member of a suspect classification, nor has Plaintiff shown the challenged policy to be that which affects a fundamental right. The Court therefore concludes that the strict scrutiny test does not apply to the issues in this case.

■ The Court finds that Plaintiff's claims must therefore be analyzed under the rational relationship analysis. *Blue v. University Interscholastic League*, 503 F.Supp. 1030 (N.D.Tex.1980); *Spring Branch I.S.D. v. Stamos*, 695 S.W.2d 556 (Tex.1985). Thus, the Court must deter-

---

**22.** Plaintiff's Second Amended Complaint, at 5–6.

mine whether DISD's administrative release coding system is rationally related to a legitimate state interest.

The parties do not dispute that Defendant Santillo developed the administrative release codes for teacher terminations at the request of the Board of Trustees.[23] There is also no dispute that Santillo was allowed discretion in assigning an administrative release code to terminating teachers.[24]

Plaintiff must establish that the decision to not rehire him and other individuals similarly situated was not rationally related to a legitimate state interest. Plaintiff contends that DISD's alleged "accepting and approving" or "accepting and not approving" a teacher's resignation and then assigning a termination code to the resignation is not rationally related to DISD's interest in maintaining a permanent teaching force.[25]

The Court concludes that DISD has a legitimate interest in maintaining a permanent teaching force. The Court further concludes that to assign a code to teacher resignations based on the teachers' reasons for leaving serves a legitimate purpose. DISD, as an employer, has a legitimate interest in maintaining an efficient record-keeping system which affords DISD the ability to make reasonable and informed decisions regarding re-employment of employees who had previously resigned their positions. *Wells v. Doland,* 711 F.2d 670 (5th Cir.1983); *University Interscholastic League v. North Dallas Chamber of Commerce Soccer Association,* 693 S.W.2d 513 (Tex.Civ.App.—Dallas 1985, no writ).

The Court concludes that there is a reasonable basis for the use of the administrative coding system. The Court further concludes that there is insufficient summary judgment evidence to support Plaintiff's proposition that the system was not applied even-handedly as to him and other persons similarly situated.

The Court therefore determines that DISD did not act in an arbitrary and capricious manner in developing the coding system and in applying it to Plaintiff's circumstances regarding his resignation. The Court is of the opinion that summary judgment in Defendants' favor should be granted on this issue.

### *Claims under 42 U.S.C. §§ 1983 and 1985*

Plaintiff contends that "employees within the Defendant DISD conspired to violate the contract rights of Plaintiff, in violation of 42 U.S.C. § 1983 and § 1985, while they were acting within the scope of their duties as agents and employees of the Defendant and that said secret blacklisting scheme was a policy of the Defendant district." [26]

■ To establish a cause of action under section 1983, Plaintiff must allege a deprivation of a federally protected right. It is not enough to allege violation of state law. *Williams v. Treen,* 671 F.2d 892 (5th Cir. 1982), *cert. denied,* 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1982). Finding that Plaintiff has not established a claim which reaches constitutional proportions, the Court must also find that Plaintiff has not established a *prima facie* case under section 1983. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

■ Regarding Plaintiff's claims under section 1985, Plaintiff alleges that there existed a conspiracy among Defendants to deprive Plaintiff of his rights and to not renew his contract. The Court is of the opinion that Plaintiff's conspiracy claim cannot stand because a school and its officials constitute a single legal entity which cannot conspire with itself. *Chambliss v. Foote,* 421 F.Supp. 12 (E.D.La.1976), *aff'd,* 562 F.2d 1015 (5th Cir.1977), *cert. denied,* 439 U.S. 839, 99 S.Ct. 127, 58 L.Ed.2d 137 (1978); *Zentgraf v. Texas A & M University,* 492 F.Supp. 265 (S.D.Tex.1980). Plain-

---

**23.** Plaintiff's Response to Defendants' Motion for Summary Judgment, at 28, Exhibit YY to Plaintiff's Response.

**24.** Plaintiff's Exhibit AAA to Response to Defendants' Motion for Summary Judgment.

**25.** Plaintiff's Response to Defendants' Motion for Summary Judgment, at 23–25.

**26.** Plaintiff's Second Amended Complaint, at 6.

tiff only alleges actions by school officials in connection with school affairs. The Court concludes that there could be no conspiracy among the officials.

■ Plaintiff has also failed to show that there was a "class-based" animus in the operation of the administrative coding system. The actions taken by Defendants related to Plaintiff's individual circumstances and not because he is a member of some identifiable class or race. *Keddie v. Penn State University*, 412 F.Supp. 1264 (M.D. Pa.1976). Finding that Plaintiff has not established that Defendants' actions stemmed from a "class-based animus," the Court finds that summary judgment in favor of Defendants on this issue is appropriate. *Keddie*, at 1275–1276.

### Plaintiff's Contract Claim

Plaintiff contends that Defendants breached their contract with Plaintiff by assigning the administrative code to his personnel file, "blacklisting" him, and by violating his constitutional rights. Plaintiff further contends that Defendants are estopped from claiming that Plaintiff breached his contract because Defendants did not apprise Plaintiff that his resignation was disapproved.[27]

The record reflects that Plaintiff's resignation was accepted on March 8, 1983, to become effective March 25, 1983, and Defendant Santillo wrote a letter on March 17, 1983 informing Plaintiff that his resignation had been accepted.[28] The Court finds that the contract of employment terminated as of March 25, 1983.

Plaintiff contends that Defendants had one of two options to follow. First, Plaintiff contends that Defendants could have agreed in writing to Plaintiff's request for resignation. Second, Plaintiff contends that Defendants had the option of recommending that his teaching certificate be suspended under the terms of the contract.[29] Plaintiff alternatively contends that if Defendants' failure to follow one of these procedures was not a breach of contract, then DISD induced Plaintiff to breach the contract by giving Plaintiff an ambiguous answer to his request for resignation and allowing Plaintiff to believe he had District approval for termination.[30]

■ The Court finds that Defendants informed Plaintiff that his resignation was accepted by letter dated March 17, 1983.[31] The Court further finds that Defendants acted reasonably after having been informed both verbally and in writing that Plaintiff intended to resign his teaching position to accept a position at Principia College. The Court concludes that Plaintiff voluntarily relinquished his contract rights by tendering a resignation after he was informed that his request for leave of absence was not approved. The Court further concludes that Plaintiff assumed the

27. Plaintiff's Second Amended Complaint, at 8.

28. Defendants' Exhibit I to Defendants' Motion for Summary Judgment; Defendants' Exhibit K to Defendants' Motion for Summary Judgment.

29. Defendants' Exhibit B to Defendants' Motion for Summary Judgment is the contract executed by Plaintiff and Defendants. The contract states in pertinent part:

This contract of employment is a binding contract and may not be terminated by the teacher without written District approval. The teacher may make written request to the Assistant Superintendent—Personnel for termination of this contract; however, this contract will not be terminated unless agreed to in writing by the Assistant Superintendent—Personnel. On or before July 1 preceding an ensuing scholastic year, the District will consider any request by the teacher for termi-

nation based on reasonable circumstances. However, after July 1, preceding an ensuing scholastic year and during said scholastic year, the District will only consider requests by the teacher for termination based on exceptional and unusual circumstances.

If the Assistant Superintendent—Personnel does not agree in writing to terminate this contract, any resignation or other termination of this contract by the teacher will result in the District's recommendation to the State Commissioner of Education that the teacher's certificate be suspended and that the teacher be prohibited from employment by any other school district in the State of Texas for one complete scholastic year.

30. Plaintiff's Response to Defendants' Motion for Summary Judgment, at 38.

31. Defendants' Exhibit K to Defendants' Motion for Summary Judgment.

consequences of resigning from his position, and has not established a claim for continued expectation of re-employment, as discussed at page 1328 of this Order.

The Court is of the opinion that Defendants acted reasonably, and could have reasonably been expected to "accept" Plaintiff's resignation, without "approving" it since two requests to approve a leave of absence had already been denied.[32] The Court is therefore of the opinion that Plaintiff's resignation and DISD's acceptance of it, terminated the contract, and extinguished the rights created by the contract. *See, Atkins v. Beasley,* 544 S.W.2d 505 (Tex.Civ.App.—Waco 1976, no writ); *Hodges v. Braun,* 654 S.W.2d 542 (Tex.Civ.App.—Dallas 1983, writ ref'd. n.r.e.). The Court concludes that summary judgment in favor of Defendants on Plaintiff's contract claim is appropriate.

### Open Records Law Claim

Plaintiff contends that Defendants deprived him of his rights and violated his freedoms as guaranteed under the Texas Open Records Law, Tex.Rev.Civ.Stat.Ann. Art. 6252–17a.

Defendants assert that this statute is a criminal statute and may not be used in a civil proceeding unless the plaintiff seeks a writ of mandamus.

The Court assumes that Plaintiff is relying upon Tex.Rev.Civ.Stat.Ann. Art. 6252–17a § 3(a)(2), which states:

(a) All information collected, assembled, or maintained by governmental bodies pursuant to law to ordinance or in connection with the transaction of official business is public information and available to the public during normal business hours of any governmental body, with the following exceptions only:

(2) information in personnel files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; provided, however, that all information in personnel files of an individual employee within a governmental body is to be made available to that individual employee or his designated representative as is public information under this Act.

Although Plaintiff's complaint is unclear, the Court presumes from the complaint as a whole and Plaintiff's response to Defendants' motion for summary judgment, that Plaintiff's claim under the Texas Open Records Law regards DISD's alleged failure to apprise Plaintiff that an administrative code 60 was placed in his personnel file.

The record reflects that Plaintiff's personnel file was made available to him for inspection.[33] The record further reflects that the exit evaluation made by Charles Fisher which recommended that Plaintiff not be rehired was removed from Plaintiff's personnel file after Defendants determined that Plaintiff had not been given a copy of the exit evaluation.[34]

The Court is of the opinion that the Texas Open Records Act does not apply in this case for two reasons. First, Plaintiff was allowed to inspect his personnel file. Second, had Plaintiff not been allowed to inspect his personnel file, his recourse was to seek a writ of mandamus against the officials who refused to allow him to inspect his personnel file. *Hubert v. Harte–Hanks Texas Newspapers, Inc.,* 652 S.W.2d 546 (Tex.Civ.App.—Austin 1983, writ ref'd. n.r.e.). As Plaintiff's complaint is lacking allegations within these parameters, the Court must conclude that the Texas Open Records Law is inapplicable here, and summary judgment in favor of Defendants on this issue is appropriate.

It is therefore ORDERED that Defendants' Motion for Summary Judgment is granted.

---

**32.** Defendants' Exhibits D, E, and G to Defendants' Motion for Summary Judgment.

**33.** Plaintiff's Exhibit Z to Plaintiff's Response to Defendants' Motion for Summary Judgment.

**34.** Plaintiff's Exhibit GG to Plaintiff's Response to Defendants' Motion for Summary Judgment.