HALL V. STATE 






NO. 10-90-073-CR

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

Â Â Â Â Â Â Â Â Â Â MICHAEL RAY HALL,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee

* * * * * * * * * * * * *

 From the 54th Judicial District Court
McLennan County, Texas
Trial Court # 90-97-C

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
Â Â Â Â Â Â Â Â Â Â Appellant was charged with the felony offense of aggravated assault on a peace officer
enhanced by two prior felonies. See Tex. Penal Code Ann. Â§ 22.02 (Vernon Supp. 1991). He
was found guilty by a jury and assessed 62 years in prison. We will affirm.
Â Â Â Â Â Â Â Â Â Â Appellant argues that the crime of evading arrest should have been included in the charge,
as he requested, because it is a lesser included offense of aggravated assault on a peace officer. 
Â Â Â Â Â Â Â Â Â Â The Code of Criminal Procedure guides in determining which offenses are lesser included
offenses. See Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981). The code reads as
follows:
An offense is a lesser included offense if:
(1) it is established by proof of the same or less than all the facts required to
establish the commission of the offense charged;
(2) it differs from the offense charged only in the respect that a less serious injury
or risk of injury to the same person, property, or public interest suffices to establish its
commission;
(3) it differs from the offense charged only in the respect that a less culpable mental
state suffices to establish its commission; or
(4) it consists of an attempt to commit the offense charged or an otherwise included
offense.
Id. The procedure for determining whether a charge on a lesser included offense is required
utilizes a two-step analysis. Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim App. 1981) (on
rehearing). "First, the lesser included offense must be included within the proof necessary to
establish the offense charged. Secondly, there must be some evidence in the record that if the
defendant is guilty, he is guilty of only the lesser offense." Id. Whether an offense is a lesser
included offense will be determined on a case-by-case basis. Broussard v. State, 642 S.W.2d
171, 173 (Tex. Crim. App. 1982).
Â Â Â Â Â Â Â Â Â Â In this matter, Appellant argues that evading arrest is a lesser included offense of
aggravated assault on a peace officer. At trial, Appellant cited Sutton v. State, which supports the
premise that the crime of "resisting arrest" is a lesser included offense of aggravated assault on
a peace officer. See Sutton v. State, 548 S.W.2d 697 (Tex. Crim. App. 1977). Sutton, however,
does not hold that evading arrest is a lesser included offense. We find no case where "evading
arrest" has been found to be a lesser included offense of aggravated assault on a peace officer.
Â Â Â Â Â Â Â Â Â Â The elements of evading arrest require that the accused (1) intentionally flee (2) from a
person he knows is a peace officer attempting to arrest him or detain him for the purpose of
questioning or investigating possible criminal activity. Tex. Penal Code Ann. Â§ 38.04 (Vernon
Supp. 1991). The elements of aggravated assault on a peace officer are that the accused (1)
intentionally, knowingly, or recklessly cause bodily injury to a peace officer, (2) when the accused
knows or has been informed that the person assaulted is a peace officer and (3) while the peace
officer is in the lawful discharge of an official duty. Id. at Â§Â§ 22.01, 22.02 (Vernon 1989 and
Vernon Supp. 1991). 
Â Â Â Â Â Â Â Â Â Â Thus, the element of intentionally fleeing is not an element of aggravated assault on a peace
officer. Evading arrest does not require proof of the same or less facts as the offense charged, but
requires proof of more facts and, therefore, fails the first prong of the two-step analysis utilized
in Royster v. State. See Royster, 622 S.W.2d at 446 (on rehearing). 
Â Â Â Â Â Â Â Â Â Â The Appellant's points are overruled and the judgment of the trial court is affirmed.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOBBY L. CUMMINGS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Thomas,
Â Â Â Â Â Â Â Â Â Â Justice Cummings and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion delivered and filed June 13, 1991
Do not publish



ssed the suit with prejudice.  Raising
three issues, Brewer appeals.

Application of Section 14.002

Â Â Â Â Â Â Â Â Â Â Â  A prison inmate who files suit in a Texas state court pro se and who seeks to proceed in forma pauperis must comply with
the procedural requirements set forth in Chapter 14 of the Civil Practice and
Remedies Code. Â Tex. Civ. Prac. & Rem.
Code Ann. Â§Â§ 14.002(a), 14.004, 14.005 (Vernon 2002).Â  Failure to
fulfill those procedural requirements will result in dismissal of an inmateÂs suit.Â 
See Bell v. Texas DepÂt of Crim. Justice-Inst. Div., 962 S.W.2d 156, 158
(Tex. App.ÂHouston [14th Dist.] 1998, pet. denied).

Â Â Â Â Â Â Â Â Â Â Â  BrewerÂs first issue complains about
the facial unconstitutionality of Chapter 14.Â  He asserts that, despite his
invocation of Chapter 14 by his filing an affidavit of indigence, once the
trial court assessed costs and ordered their payment out of his inmate trust
account, the continued application of Chapter 14 violates equal protection and is
thus unconstitutional because his suit is treated differently than the suit of
a non-indigent inmate who paid costs of suit in advance and thus would not be
governed by Chapter 14).

Â Â Â Â Â Â Â Â Â Â Â  Constitutional
violations must be raised in the trial court to be preserved for appellate
review.Â  In re S.A.P., 169 S.W.3d 685, 692 (Tex. App.ÂWaco 2005, no
pet.) (citing In re L.M.I., 119 S.W.3d 707, 710-11 (Tex. 2003)).Â 
Because Brewer did not raise his equal protection argument in the trial court,
he has not preserved his first issue for appellate review.Â  Tex. R. App. P. 33.1(a).

Chapter 14 Dismissal

Â Â Â Â Â Â Â Â Â Â Â  Generally, the dismissal of inmate
litigation under Chapter 14 is reviewed for abuse of discretion.Â  Hickson v.
Moya, 926 S.W.2d 397, 398 (Tex. App.ÂWaco 1996, no writ).Â  ÂTo establish an
abuse of discretion, an appellant must show the trial courtÂs actions were
arbitrary or unreasonable in light of all the circumstances.Â  The standard is
clarified by asking whether the trial court acted without reference to any
guiding rules or principles.ÂÂ  Spurlock v. Schroedter, 88 S.W.3d 733, 735-36
(Tex. App.ÂCorpus Christi 2002, no pet.) (internal citations omitted).

Affidavits Relating to the Grievance System

Section 14.005(a) mandates that an inmate who
files a claim that is subject to the TDCJ grievance system file an affidavit or
unsworn declaration stating the date that his grievance was filed and the date
that he received the written grievance decision.Â  Tex. Civ. Prac. & Rem. Code Ann. Â§ 14.005(a)(1).Â  The
section also mandates the filing of a copy of the written grievance decision.Â  Id. Â§ 14.005(a)(2).Â  If an inmate does not strictly comply with section 14.005(a), a
trial court does not abuse its discretion in dismissing the claim.Â  Draughon
v. Cockrell, 112 S.W.3d 775, 776 (Tex. App.ÂBeaumont 2003, no pet.).Â 
BrewerÂs second issue complains that the trial court abused its discretion for
dismissing his suit because of noncompliance with section 14.005(a).

Â Â Â Â Â Â Â Â Â Â Â  Brewer filed an original affidavit of
grievances and a supplemental affidavit of grievances with his original
petition, and Brewer filed a second
supplemental affidavit of grievances two weeks later.Â  In their motion to
dismiss, the defendants asserted:Â  (1) BrewerÂs attached grievances refer to
retaliation claims against only Simental and Townsend; (2) a copy of the
grievance against Simental and Townsend was not included; and (3) Brewer did
not grieve against Seigle.Â  For these reasons, the defendants contended that
Brewer did not comply with section 14.005 and Brewer did not exhaust his
administrative remedies.

Â Â Â Â Â Â Â Â Â Â Â  Brewer filed six detailed grievances
pertaining to his claims in this case, as shown by BrewerÂs original affidavit
of grievances and his two supplemental affidavits of grievances.Â  The two
supplemental affidavits were necessitated by the prisonÂs need for extensions
to investigate two of the grievances (including BrewerÂs second (October 19) grievance
against Simental and Townsend) and to replace the prisonÂs notices of extension
with the grievances upon BrewerÂs receipt.Â  On appeal, defendants in effect
concede that Brewer technically complied with section 14.005(a), and the record
reflects such compliance.Â  Therefore, to the extent the trial court dismissed
BrewerÂs suit for failure to comply with section 14.005, we find no grounds
upon which the trial court could have found a failure to comply, and we
conclude that the trial court abused its discretion.Â  See Spurlock, 88
S.W.3d at 733.

Â Â Â Â Â Â Â Â Â Â Â  The other aspect of the defendantsÂ
contention goes to the substance of BrewerÂs grievances and the persons whom
Brewer was grieving against.[1]Â  A
remedy provided by the statutory prison inmate grievance system is the
exclusive administrative remedy available to an inmate for a claim for relief
against the department.Â  Tex. GovÂt Code
Ann. Â§ 501.008(a) (Vernon 2004).Â  ÂAn inmate may not file a claim in
state court regarding operative facts for which the grievance system
provides the exclusive administrative remedy until: (1) the inmate receives a
written decision issued by the highest authority provided for in the grievance
system; . . .ÂÂ  Id. Â§ 501.008(d)(1) (emphasis added).

Â Â Â Â Â Â Â Â Â Â Â  The purpose of sections 14.005 and
501.008 is to allow the trial court to ensure that an inmate proceeding in
forma pauperis has first used TDCJÂs grievance procedure and has exhausted
his administrative remedies through the prison grievance system before filing
suit on the same operative facts.Â  See Spurlock, 88 S.W.3d at 737; Smith
v. Texas DepÂt of Crim. Justice-Inst. Div., 33 S.W.3d 338, 341 (Tex.
App.ÂTexarkana 2000, pet. denied).Â  Other than reviewing a grievance to insure
that the inmateÂs claim arises from the same operative facts set forth in the
grievance, nothing in the grievance system statutes supports the defendantsÂ
contention that the trial courtÂor an appellate court reviewing a trial
courtÂcan or should parse through an inmateÂs grievance to determine the nature
of the inmateÂs claims and whether a person is a proper party based on the
grievanceÂs content.Â  Accord Johnson v. Johnson, 385 F.3d 503, 522 (5th
Cir. 2004) (applying federal exhaustion statute) (ÂWe
are mindful that the primary purpose of a grievance is to alert prison
officials to a problem, not to provide personal notice to a particular official
that he may be sued; the grievance is not a summons and complaint that
initiates adversarial litigation. Â Cf. Brown[ v. Sikes, 212 F.3d
1205, 1207-10 (11th Cir. 2000)] (rejecting a rule that a prisoner must always
name defendants in his grievance). Â But, at the same time, the grievance must
provide administrators with a fair opportunity under the circumstances to
address the problem that will later form the basis of the suit, and for many types
of problems this will often require, as a practical matter, that the prisonerÂs
grievance identify individuals who are connected with the problem.Â).

Â Â Â Â Â Â Â Â Â Â Â  We have reviewed BrewerÂs grievances.Â 
They set forth the same operative facts as his petition with great detail.Â  They
provide prison administrators with fair notice of his allegations so that the
alleged problem could have been addressed by them, and for each grievance, no
administrative response asserted a lack of specificity or inadequacy.Â  Therefore,
to the extent the trial court dismissed BrewerÂs suit based on the defendantsÂ
grounds that the grievances did not adequately set forth the claims and parties
as in this suit, we find no grounds upon which the trial court could have could
have concluded that Brewer failed to comply with sections 14.005 and 501.008 in
exhausting his administrative remedies, and we conclude that the trial court
abused its discretion.Â  We sustain BrewerÂs second issue.

Frivolousness

Â Â Â Â Â Â Â Â Â Â Â  The trial courtÂs dismissal order
states that BrewerÂs petition is frivolous.Â  BrewerÂs third issue complains
that the trial courtÂs dismissal for frivolousness is an abuse of discretion.

Section 14.003 allows a trial court to dismiss a
suit filed by an indigent inmate, either before or after service of process, if
the court finds that the claim is frivolous or malicious. Â Tex. Civ. Prac. & Rem. Code Ann. Â§
14.003(a)(2).Â  In determining whether the claim is frivolous or malicious, the trial
court may consider whether (1) the claimÂs realistic chance of ultimate success
is slight; (2) the claim has no arguable basis in law or in fact; (3) it is
clear that the party cannot prove facts in support of the claim; or (4) the
claim is substantially similar to a previous claim filed by the inmate because
the claim arises from the same operative facts.Â  Id. Â§ 14.003(b).

Â Â Â Â Â Â Â Â Â Â Â  Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  The Texas Supreme Court has expressed
doubt about whether a trial court can properly dismiss a suit only because the
claimÂs realistic chance of ultimate success is slight or because it is clear
that the party cannot prove facts in support of the claim. Â Johnson v.
Lynaugh, 796 S.W.2d 705, 706-07 (Tex. 1990).Â  Practically speaking,
therefore, the trial court is limited to determining whether the claim has an
arguable basis in law or fact. Â Bohannan v. Texas Bd. of Criminal Justice,
942 S.W.2d 113, 115 (Tex. App.ÂAustin 1997, writ denied).Â  When the trial court
dismisses a claim without conducting a fact hearing, we are limited to
reviewing whether the claim had an arguable basis in law.Â  Sawyer v. Texas DepÂt of Criminal Justice, 983 S.W.2d 310, 311 (Tex. App.ÂHouston [1st Dist.]
1998, pet. denied); Leon Springs Gas Co. v. Rest. Equip. Leasing Co.,
961 S.W.2d 574, 579 (Tex. App.ÂSan Antonio 1997, no pet.); Bohannan v. Texas
Bd. of Criminal Justice, 942 S.W.2d at 115; In re Wilson, 932 S.W.2d
263, 265 (Tex. App.ÂEl Paso 1996, no writ).

Â 

Smith, 33 S.W.3d at 340; see also Spurlock, 88
S.W.3d at 736.

Â 

Â Â Â Â Â Â Â Â Â Â Â  The issue before us is whether the
trial court properly determined there was no arguable basis in law for the
suit.Â  Spurlock, 88 S.W.3d at 736 (citing Lentworth v. Trahan,
981 S.W.2d 720, 722 (Tex. App.ÂHouston [1st Dist.] 1998, no pet.)).Â  A fact
hearing on frivolousness is necessary only if the claim has an arguable basis
in law.Â  Johns v. Johnson, 2005 WL 428465, at *1 (Tex. App.ÂWaco Feb. 23, 2005, no pet.) (mem. op.) (citing Denson v. T.D.C.J.-I.D., 63 S.W.3d
454, 459 (Tex. App.ÂTyler 1999, pet. denied)).Â  In this case, the trial court
held no fact hearing on the defendantsÂ motion to dismiss.Â  Thus, its basis for
determining that BrewerÂs claims were frivolous could not have been because it
found they had no arguable basis in fact, but was because they had no arguable
basis in law.Â  Id.Â  The issue of whether there was an arguable basis in
law is a legal question that we review de novo.Â  Id.; Moreland v.
Johnson, 95 S.W.3d 392, 394 (Tex. App.ÂHouston [1st Dist.] 2002, no pet.).

Â Â Â Â Â Â Â Â Â Â Â  To determine whether the trial court
properly decided there was no arguable basis in law for BrewerÂs suit, we
examine the types of relief and causes of action that Brewer pled in his
petition to determine whether, as a matter of law, the petition stated a cause
of action that would authorize relief.Â  Johns, 2005 WL 428465, at *1; Spurlock,
88 S.W.3d at 736.Â  We review and evaluate pro se pleadings by standards less
stringent than those applied to formal pleadings drafted by lawyers.Â  Spurlock,
88 S.W.3d at 736 (citing Thomas v. Collins, 860 S.W.2d 500, 503 (Tex.
App.ÂHouston [1st Dist.] 1993, writ denied)). Â Also, in reviewing the dismissal
of BrewerÂs suit, we are bound to take as true the allegations in his
petition.Â  Jackson v. Tex. DepÂt Crim. Justice-Inst. Div., 28 S.W.3d
811, 813 (Tex. App.ÂCorpus Christi 2000, pet. denied).

Â Â Â Â Â Â Â Â Â Â Â  Section 1983

Â Â Â Â Â Â Â Â Â Â Â  BrewerÂs suit asserts claims under 42
U.S.C Â§ 1983. Â Section 1983 provides a cause of action and remedy when any ÂpersonÂ
acting under color of state law deprives another of rights, privileges, or
immunities protected by the U.S. Constitution or laws.Â  Gordon v. Scott,
6 S.W.3d 365, 369 (Tex. App.ÂBeaumont 1999, pet. denied) (citing Thomas,
960 S.W.2d at 109).Â  A section 1983 action will lie against state officials in
their personal or individual capacities.Â  Id.Â  Brewer sued all seven
defendants in their individual capacities.

Â Â Â Â Â Â Â Â Â Â Â  BrewerÂs petition asserts two distinct
claims:[2]Â  (1)
retaliation for BrewerÂs exercise of his constitutional right to access the
courts; and (2) conspiracy to retaliate for attempting to exercise his
constitutional right to access the courts.

Â Â Â Â Â Â Â Â Â Â Â  Retaliation

Â Â Â Â Â Â Â Â Â Â Â  To prevail on a section 1983 retaliation
claim, an inmate Âmust be able to show more than a personal belief that he is
the victim of retaliation.ÂÂ  Johns, 2005 WL 428465, at *3 (citing Johnson
v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997)).

[A]n inmate must be able to establish:Â  i) a
specific constitutional right; ii) the defendantsÂ intent to retaliate against
him for exercising that right; iii) a retaliatory adverse act; and iv)
causationÂa showing that Âbut for the retaliatory motive, the complained of
incident would not have occurred.ÂÂ  McDonald v. Steward, 132 F.3d 225,
231 (5th Cir. 1998).

Â 

Id.Â  Indisputably, Âa
prison official may not retaliate against or harass an inmate for exercising
the right of access to the courts, or for complaining to a supervisor about a
guardÂs misconduct.ÂÂ  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.
1995).Â  The purpose of allowing retaliation claims under section 1983 is to
ensure that prisoners are not unduly discouraged from exercising their
constitutional rights. Â Morris v. Powell, 449 F.3d 682, 686 (5th Cir.
2006).

Â Â Â Â Â Â Â Â Â Â Â  i.Â  specific constitutional right

Â Â Â Â Â Â Â Â Â Â Â  ÂAn
inmate has a constitutional right of access to courts.Â  Tighe v. Wall,
100 F.3d 41, 42 (5th Cir. 1996).Â  That access must be adequate, effective, and
meaningful.Â  Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52
L.Ed.2d 72 (1977).ÂÂ  Johns, 2005 WL 428465, at *2.Â  BrewerÂs petition
plainly meets this element.

Â Â Â Â Â Â Â Â Â Â Â  ii.Â  intent to retaliate

Â Â Â Â Â Â Â Â Â Â Â  The inmate
must Âallege a chronology of events from which retaliation may plausibly be
inferred.ÂÂ  Woods, 60 F.3d at 1166 (quoting Murphy v. Lane, 833
F.2d 106, 108-09 (7th Cir. 1987) (holding that the plaintiffÂs complaint Âset
forth a chronology of events from which retaliatory animus on the part of
defendants could arguably be inferredÂ sufficient to overcome a motion to
dismiss)); see also Johns, 2005 WL 428465, at *3 (inmateÂs
petition failed to allege facts or chronology of events showing retaliation).Â  BrewerÂs
26-page petition more than adequately details a
chronology of events from which the defendantsÂ retaliatory animus could
arguably be inferred.Â  Brewer pleads, for example, that the defendants knew he
had a court deadline, that the defendants knew he was assigned to work utility
from 1:00 p.m. to 9:00 p.m., that the defendants knew that he could not obtain
law-library lay-ins during his assigned work hours, that the defendants knew he
had law-library lay-ins at 5:50 a.m., and that the defendants told him that
they did not care that he had lay-ins because they could make him work whenever
they wanted to, including when Brewer had a scheduled lay-in or was actually in
the law library.[3]Â 
Moreover, Brewer pleads that, on October 18, while attending his 5:55 a.m. to 7:55
a.m. law library session, at 6:54 a.m. Simental called the library and told the
officer on duty that Brewer should not have a lay-in and told the officer to
send Brewer to meet with Simental at the C-Hall Desk.Â  Brewer met Simental and
Townsend there, and they both stated, ÂWe have already told you that you would
not be attending the law library.ÂÂ  They then placed Brewer under cell
restriction, and when Brewer said that he would file another grievance against
them, they both stated, Âwhen we are done with you, you wonÂt know how to spell
grievance.Â

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  BrewerÂs petition adequately
pleads retaliatory intent.Â  See Martin v. Ezeagu, 816 F. Supp. 20,
24Â (D.D.C.Â 1993) (inmate adequately pled ongoing pattern of
harassment, interference, and exclusion from law library).

Â Â Â Â Â Â Â Â Â Â Â  iii.Â  retaliatory adverse act

Â Â Â Â Â Â Â Â Â Â Â  BrewerÂs 26-page petition details the
numerous times between October 7 and October 19 that Simental, at times alone
and at times with Townsend and Davis, removed Brewer from the law library because
he allegedly was not reporting to utility work in Ad. Seg. at 5:00 a.m.Â  The
petition details the several allegedly false disciplinary charges that were
filed against him by Simental, Townsend, Davis, and Duke on the ground that Brewer
was not reporting to utility work in Ad. Seg. at 5:00 a.m., yet Brewer pleads
that he was already scheduled to work a 1:00 p.m. to 9:00 p.m. utility shift
and he had law-library lay-ins starting at 5:50 a.m.Â  BrewerÂs petition details
the disciplinary punishment he received as a result of those charges:Â  commissary
restrictions, cell restrictions, loss of contact visitation, property restriction,
and line class reductions.

Â Â Â Â Â Â Â Â Â Â Â  BrewerÂs petition adequately pleads
retaliatory adverse acts.




Â Â Â Â Â Â Â Â Â Â Â  iv.Â  causation

Â Â Â Â Â Â Â Â Â Â Â  BrewerÂs petition adequately details
that, but for the defendantsÂ orders for him to report to work during his law
library lay-ins, the disciplinary charges and the resulting punishments would
not have occurred.

Â Â Â Â Â Â Â Â Â Â Â  In conclusion, in our de novo review
of BrewerÂs petition, we hold that his section 1983 retaliation claim has an arguable
basis in law.Â  Accordingly, the trial court abused its discretion in dismissing
it as frivolous.Â  We sustain in part BrewerÂs third issue.

Â Â Â Â Â Â Â Â Â Â Â  Conspiracy

Â Â Â Â Â Â Â Â Â Â Â  Brewer alleges that several other
prison officials or employees conspired with Simental and his cohorts to assist
in their retaliation against Brewer.Â  Brewer alleges that Janet C. Taylor, an
administrative assistant, assisted Simental by changing BrewerÂs work hours in
the prison computer system in the middle of SimentalÂs course of conduct to
keep Brewer out of the library and by not notifying Brewer of this change (he
alleged receiving notice of the changed hours after Simental filed a
disciplinary report charging Brewer with not reporting to work as ordered and
scheduled). [4]

Â Â Â Â Â Â Â Â Â Â Â  Brewer alleges that John D. Seigle, a
corrections sergeant and law library supervisor, assisted Simental on October
19 by acceding to SimentalÂs demand that BrewerÂs lay-in for that day, which
Seigle had issued, be taken back.Â  According to Brewer, while he was in the law
library, Seigle was called to SimentalÂs office, and when Seigle returned, he
said that Simental had accused him of Âtaking sidesÂ with an offender instead
of with a co-worker and ranking officer.

Â Â Â Â Â Â Â Â Â Â Â  Lindsay Lewis, the WardenÂs grievance
investigator, and Robert Losack, a corrections captain and disciplinary hearing
officer, are alleged to have assisted Simental in the grievance and
disciplinary process by ignoring evidence and preventing BrewerÂs access to
evidence to defend his claims and defenses.Â  Brewer also alleges that Lewis and
Losack had the authority to stop SimentalÂs retaliation but failed to do so.Â 
Instead, they removed BrewerÂs Ad. Seg. restriction, denied BrewerÂs
grievances, and disciplined Brewer.

Â Â Â Â Â Â Â Â Â Â Â  In a federal suit with similar claims
alleged, the district court stated the applicable law:

Â Â Â Â Â Â Â Â Â Â Â  To
allege a claim of conspiracy to deprive a plaintiff of his constitutional rights,
a plaintiff must allege, Â(1) a conspiracy involving two or more persons; (2)
for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3)
an act in furtherance of the conspiracy; (4) which causes injury to a person or
property, or deprivation of any right or privilege of a citizen of the United
States.Â Â Hilliard v. Ferguson, 30 F.3d 649, 652-53 (5th Cir. 1994).
Where all of the defendants are members of the same collective entity, however,
the conspiracy does not involve two or more people. Â Id. at 653; see
also Moody v. Jefferson Parish Sch. Bd., 803 F. Supp. 1158, 1166 (E.D. La. 1992)
(School Board, Principal, Vice-Principal, and various teachers are all employed
by the Jefferson Parish School Board and, thus, are a single entity), affÂd,
2 F.3d 604 (5th Cir. 1993); Hankins v. Dallas Indep. Sch. Dist., 698 F. Supp.
1323, 1330 (N.D. Tex. 1988) (high school and its officials constitute a single
entity); Chambliss v. Foote, 421 F. Supp. 12, 15 (E.D. La. 1976) (Âthe
university and its officials are considered as constituting a single legal
entity which cannot conspire with itselfÂ), affÂd, 562 F.2d 1015 (5th
Cir. 1977).

Â 

Brown v. Carr, 2008 WL 2571713, at
*5 (S.D. Tex. June 26, 2008).Â  Because all of the defendants were members of
the same collective entity (TDCJ-IDÂs McConnell Unit), the plaintiff did not
state a separate legal claim for conspiracy apart from his retaliation claim.Â  See
id.

Â Â Â Â Â Â Â Â Â Â Â  BrewerÂs conspiracy claim suffers from the same flaw;
all of the defendants who allegedly conspired are or were Wynne Unit employees
at the time of the alleged acts.Â  Accordingly, they could not have conspired
under the applicable law to afford Brewer an actionable section 1983 conspiracy
claim, and that claim thus has
no arguable basis in law.[5]Â 
Accordingly, the trial court did not abuse its discretion in dismissing it as
frivolous.Â  We overrule in part BrewerÂs third issue.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  Having sustained BrewerÂs second issue
and his third issue in part, we reverse the trial courtÂs dismissal order and
remand this cause for further proceedings consistent with this opinion.

Â 

Â 

BILL VANCE

Justice

Â 

Â 

Before Chief Justice
Gray,

Â Â Â Â Â Â Â Â Â Â Â  Justice
Vance, and

Â Â Â Â Â Â Â Â Â Â Â  Justice Reyna

Â Â Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray dissents.Â  A separate opinion will not issue.)

Reversed and remanded

Opinion delivered and
filed September 10, 2008

[CVPM]









[1] Â Â Â Â Â Â Â Â Â Â Â Â Â  The Fifth Circuit has summarized
the TDCJ grievance guidelines for inmates:

The record in this case includes
portions of the guidelines that TDCJ provides prisoners regarding how to file
grievances. Â Among other things, the rules direct inmates to write Âbriefly and
clearlyÂ but also to Âbe very specific about your grievance or your problem.Â Â They
state that a grievance should contain facts, not legal words or conclusions. Â They
further direct the prisoner to Â[t]ell us what action you want us to take to
resolve your grievance or problem,Â but they specifically state that a prisoner
should Ânot ask us to take disciplinary action against employees.Â

Johnson v. Johnson, 385
F.3d 503, 522 (5th Cir. 2004).





[2] Â Â Â Â Â Â Â Â Â Â Â Â Â  We do not discern in BrewerÂs
petition a separate claim for the deprivation of BrewerÂs access to courts.Â  Generally,
and at least for an isolated deprivation of an inmateÂs access to court by
denying or interfering with an inmateÂs access to the law library, the inmate
must show actual injury, usually in the form of legal prejudice in the
litigation the inmate is involved in.Â  See Johns, 2005 WL 428465,
at *2.Â  But when an inmate alleges an ongoing pattern of denial of access and
interference, actual injury need not be shown.Â  See Martin v.
Ezeagu, 816 F. Supp.
20, 24Â (D.D.C.Â 1993).Â  On remand, if Brewer disagrees
with our assessment of his petition, he would not be precluded from explicitly
pleading such a claim because the facts in his grievances and petition plainly
support one.





[3] Â Â Â Â Â Â Â Â Â Â Â Â  Notable here is the
defendantsÂ contention in their brief, (Defendants-AppelleesÂ Br. at 11), along with several of the prison administrationÂs grievance responses, to the
effect that Âoffenders may be ordered to report to work at any time.ÂÂ 
(C.R. 0051, 0055, 0057, 0059, 0061, 0063) [Emphasis added.]Â  This position and
this alleged prison policy heightens the analysis of BrewerÂs retaliation claim
because it raises the specter of pretext in the denial of access to the law
library, which segues into the inmate disciplinary process.Â  I.e., a
prison guard or officer who seeks to deny an inmate access to the courts can
simply order him to report to work when the inmate has a law library pass, and
when the inmate disobeys the order, the guard or officer files a disciplinary
charge against the inmate, who is then punished for violating policy. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â  The Fifth Circuit has addressed the thorny
issue of an inmateÂs section 1983 retaliation claim arising out of an allegedly
false disciplinary charge and the tension between an inmateÂs exercise of
constitutional rights and the wide latitude needed by prison officials in the
control and disciplining of inmates:

While we remain fully supportive of the proposition that
prison officials must have wide latitude in the control and disciplining of
inmates, that Âlatitude does not encompass conduct that infringes on an
inmate's substantive constitutional rights.ÂÂ  Within that
limitation we intend no undue restriction of actions legitimately motivated by
concerns of prison order and discipline. . . .

To assure that
prisoners do not inappropriately insulate themselves from disciplinary actions
by drawing the shield of retaliation around them, trial courts must carefully
scrutinize these claims.Â  To state a claim of retaliation an inmate must allege
the violation of a specific constitutional right and be prepared to establish
that but for the retaliatory motive the complained of incidentÂsuch as the
filing of disciplinary reports as in the case at barÂwould not have occurred.Â  This places a significant burden
on the inmate.Â  Mere conclusionary allegations of retaliation will not
withstand a summary judgment challenge.Â  The inmate must produce direct evidence of
motivation or, the more probable scenario, Âallege a chronology of events from
which retaliation may plausibly be inferred.Â

Woods v. Smith, 60 F.3d 1161, 1166
(5th Cir. 1995) (footnotes and citations omitted).

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Regardless of that tension, an Âaction
motivated by retaliation for the exercise of a constitutionally protected right
is actionable, even if the act, when taken for a different reason, might have been
legitimate.ÂÂ  Id. at 1165
(citing Mt. Healthy City School Distr. Bd. of Ed. v. Doyle, 429
U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Jackson v. Cain, 864 F.2d
1235 (5th Cir. 1989); Smith v. Maschner, 899 F.2d 940 (10th Cir. 1990); Franco
v. Kelly, 854 F.2d 584 (2d Cir. 1988)).Â  In addition, several of the
administration responses to BrewerÂs grievances (C.R. 0069, 0071, 0085) confirm
his claim that he had and was using law library lay-ins when Simental or others
ordered him to work outside of his assigned work schedule, thus interfering
with his library access.Â  Thus, we are not hesitant to find that despite the apparently
legitimate disciplinary charges, BrewerÂs section 1983 retaliation claim has an
arguable basis in law.





[4] Â Â Â Â Â Â Â Â Â Â Â Â Â  The administration response to one
of BrewerÂs grievances appears to support this allegation; it notes that there
was Âa written notice of change to job hours as of 10-20-2005 at 9:26 am.ÂÂ 
(C.R. 0061).





[5] Â Â Â Â Â Â Â Â Â Â Â Â Â  The fact that BrewerÂs conspiracy
claim is not actionable does not render the allegationsÂwhich are obviously
disturbing if trueÂany less egregious, especially with BrewerÂs
access-to-courts constitutional backdrop.Â  See Wood, 60 F.3d at 1165
(noting other circuitÂs opinion that Âan allegation
of retaliatory disciplinary charges could give rise to either an independent
section 1983 action or be part of a procedural due process review of the
disciplinary hearingÂ) (citing Smith v. Maschner, 899 F.2d 940, 946-48
(10th Cir. 1990)); see also id. (Âthe court with which [the inmate] sought
contact, and not his jailer, will determine the merits of his claimÂ) (quoting Andrade
v. Hauck, 452 F.2d 1071, 1072 (5th Cir. 1971)).