Guadalupe Sustaita THOMPSON,
Individually and as Next Friend
of Jonathan Sustaita, A Minor,

v.

The CITY OF GALVESTON, Galveston
County, Norman Giles, and Phillip
Morris.

No. CIV. A. G–97–246.

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 19, 1997.

John Zavitsanos, Ahmad & Zavitsanos, Houston, TX, for Guadalupe Sustaita Thompson.

John Edward Eckel, Mills Shirley Eckel & Bassett, Galveston, TX, William Scott Helfand, Magenheim Bateman Robinson Wrotenbery & Helfand LLP, Houston, TX, for City of Galveston.

Donald S. Glywasky, Galveston County Legal Dept., Galveston, TX, for Galveston County.

William Scott Helfand, Magenheim Bateman Robinson Wrotenbery & Helfand LLP, Houston, TX, for Norman Giles, Sgt., Phillip Morris.

## ORDER GRANTING MOTIONS TO DISMISS

KENT, District Judge.

In this action, Plaintiff Guadalupe Sustaita–Thompson, Individually and as Next Friend of Jonathan Sustaita, a Minor, has brought several civil rights claims under 42 U.S.C. § 1983. In the Amended Complaint, Plaintiff brings claims of false arrest, false imprisonment, malicious prosecution, excessive force, and abuse of process against Defendants Norman Giles and Phillip Morris in their individual and official capacities and against Defendant City of Galveston; intentional infliction of emotional distress against individual Defendants Giles and Morris; and conspiracy to discriminate pursuant to 42 U.S.C. § 1983 against all Defendants. Now before the Court are both Defendant Galveston County's and the individual Defendants' Motions to Dismiss for Failure to State a Claim, dated respectively May 23, 1997 and June 12, 1997.

The City of Galveston has not moved to dismiss this case as of this date, but in consideration of the Court's decision regarding the motions to dismiss entered by the individual Defendants and by Galveston County, the Plaintiff's claims against the City of Galveston must of necessity fail as well. Therefore, for the reasons set forth below, the Motions to Dismiss are **GRANTED**, and all claims against *all* Defendants are hereby **DISMISSED WITH PREJUDICE.**

## I. FACTUAL BACKGROUND

The factual underpinnings of this case are somewhat tortured and confused. The Court notes, however, that it is not treating this case under FED.R.CIV.P. 56 as a motion for summary judgment, but rather as a motion to dismiss for failure to state a claim under FED.R.CIV.P. 12(b)(6), and therefore undisputed facts do not determine whether this case should survive the motions to dismiss.

The following are those facts that are undisputed. On May 1, 1995, Defendant Phillip Morris obtained an arrest warrant for Guadalupe Sustaita–Thompson on the charge of contributing to the delinquency of a minor, listed as Edward Sustaita. Morris was the affiant for this arrest warrant. Ms. Sustaita–Thompson was arrested on the same day, and her 10–year old son, Jonathan, (not Edward), was taken into custody at that time and taken to the Juvenile Detention Center. Sometime in March of 1996, Ms. Sustaita–Thompson pled *nolo contendere* and was convicted of the charged offense of contributing to the delinquency of a minor.

While in custody, Jonathan Sustaita confessed to an arson fire committed in Galveston on April 13, 1995, which led to the deaths of two people. Subsequently, a suspect in a later arson fire admitted to setting the same fire to which Jonathan Sustaita had previously confessed. According to the Amended Complaint, after the charges against Jonathan were apparently dismissed, he was kept in a series of state-run facilities for a period of almost a year and a half, pursuant to state court order and because of reports that he was suffering from severe depression and that Ms. Sustaita–Thompson was unfit as a mother.

The following facts are in hot dispute. First, the Plaintiff alleges that Giles and

Morris checked Jonathan out of the Juvenile Detention Center every day and "coerced" him to confess to the two murders that resulted from the April 13th arson fire. The Amended Complaint claims that the officers "consistently placed words in the mouth of this 10–year old child," and that Jonathan's statements resembled a "Mother Goose tale." Pl.'s Am. Compl. at ¶ 20. The Plaintiff further alleges that the Galveston Police Department charged Jonathan with capital murder due to arson and held a press conference announcing Jonathan's confession.

Plaintiff also argues that Giles and Morris made no reports of the investigation of the April 13th fire or of Jonathan's interrogation, and claims that the officers contend the report had been stolen from their desks. Several paragraphs of the Amended Complaint are devoted to allegations of various crimes, illegal activities and prior constitutional violations by Giles and Morris and the indifference of the Galveston Police Department to these alleged acts of misconduct by the two detectives.

Finally, the Plaintiff apparently alleges that Child Protective Services ("CPS") misrepresented the truth in affidavits submitted to the state court with respect to Ms. Sustaita–Thompson's competency as a mother. Ms. Sustaita–Thompson claims that a CPS worker swore in an affidavit that "it had been reported to law enforcement that [Plaintiff] had previously used crack cocaine; and had abused and used excessive amounts of alcohol," but that in reality she "has never been arrested for any drug offense." Pl.'s Am. Compl. at ¶ 27. These affidavits, coupled with medical reports confirming that Jonathan Sustaita was suffering from major depression, resulted in a state court order keeping Jonathan in the custody of the State for over a year and a half.

## II. STANDARD FOR DISMISSAL

Dismissal is appropriate where a plaintiff has failed to state a claim upon which relief can be granted. FED.R.CIV.P. 12(b)(6). Unlike the standard for summary judgment under FED.R.CIV.P. 56, it is not required that there be no genuine issue of material fact. FED.R.CIV.P. 12(b). For the purposes of Defendants' motions, the court accepts as true all well-pleaded allegations in the complaint, and views them in the light most favorable to the plaintiff. *See Rankin v. City of Wichita Falls,* 762 F.2d 444, 446 (5th Cir.1985).

## III. FEDERAL § 1983 CLAIMS

### A. FALSE ARREST, FALSE IMPRISONMENT, AND MALICIOUS PROSECUTION

■ Any claim of false arrest, false imprisonment, and malicious prosecution asserted on behalf of Ms. Sustaita–Thompson requires dismissal as a matter of law.[1] Because Ms. Sustaita–Thompson pled *nolo contendere* to the charges surrounding her arrest, imprisonment, and prosecution, she is barred from bringing any claims related to her conviction unless she can prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383, 392–94 (1994). Nowhere in the Original or Amended Complaint does Ms. Sustaita–Thompson challenge the validity or finality of her conviction. Accordingly, for the reasons stated above, the individual Defendants' Motion to Dismiss, in both their official and individual capacities, with respect to these claims is hereby **GRANTED**, and each and all of such claims are **DISMISSED WITH PREJUDICE**. Such claims against the City of Galveston are also *sua sponte* **DISMISSED WITH PREJUDICE**.

■ The claims of false arrest, false imprisonment, and malicious prosecution on behalf of Jonathan Sustaita also require dismissal as a matter of law. First, Jonathan Sustaita has failed to state any facts which would support a claim that he was falsely arrested. Indeed, the facts of the case fail to

---

1. Although it appears that the claims of false arrest, false imprisonment, and malicious prosecution on behalf of Ms. Sustaita–Thompson have been dropped in the Amended Complaint, the Court will nonetheless review these claims in an abundance of caution.

indicate the existence of any arrest at all. The legality of the officers' conduct in taking Jonathan into custody is governed by state law in a § 1983 action. *See Greenan v. Romeo Village Police Dept.,* 819 F.Supp. 658, 663 (E.D.Mich.1993). The Plaintiff's Amended Complaint itself negates the claim of false arrest, stating that "[o]bviously, when the mother was arrested for contributing to the delinquency of the child, whatever children were at her home would also be taken into custody for their safekeeping and well being." Pl.'s Am. Compl. at ¶ 13. Moreover, pursuant to TEX. FAM. CODE ANN. § 52.01(a) (Vernon 1996), the officers were authorized to take Jonathan into custody, and such action was not an arrest under § 52.01(b). While it may be regrettable that a 10–year old child was subjected to being taken into custody and interrogated by police officers, the alternative would have been to leave a 10–year old child, one suspected of murderous arson nonetheless, alone and wholly unsupervised at home. To have done so would have been the height of imprudence on the part of the police officers. Thus taking Jonathan Sustaita into custody was the proper course of action for the officers.

█ Next, the allegation that Jonathan Sustaita was falsely imprisoned is equally devoid of merit. As previously stated, taking Jonathan into custody was legal pursuant to Texas law. In her Response to the Motion to Dismiss, Plaintiff contends that Giles and Morris can somehow be liable for false imprisonment because they checked Jonathan out from the Juvenile Center every day and interrogated him about the arson, and because they "were responsible for eliciting Jonathan's confession." These facts alone utterly fail to state a claim for false imprisonment. Again, Giles and Morris cannot be held responsible for the fact that Jonathan was kept in custody pursuant to state court order. Plaintiff would have this Court adhere to a standard that allows a false imprisonment claim for every instance where the police interrogated a suspect who was later shown to be innocent. Such a standard would severely curtail the ability of the police to interrogate suspects in the investigation of crimes. This the Court refuses to do.

After Jonathan admitted to the crime of arson, there was certainly probable cause to hold the child pending further proceedings. And, according to the Amended Complaint, after the charges against Jonathan were "apparently dismissed," he was kept in the custody of the Texas Department of Protective and Regulatory Services, or Child Protective Services ("CPS"). Pl.'s Am. Compl. at ¶ 25. Nowhere in the Amended Complaint does Plaintiff allege that Giles or Morris had any involvement in the decision to keep Jonathan in custody after the charges were dismissed.

Furthermore, such allegations would fail to state a cause of action even if Plaintiff did allege involvement by Giles, Morris, or the City of Galveston. Plaintiff has devoted several paragraphs in her Amended Complaint detailing Jonathan's detention in several state-run facilities, all while under the custody of CPS. Plaintiff herself acknowledges that this detention was pursuant to state court order. Pl.'s Am. Compl. at ¶ 31. Jonathan's detention in the state facilities was therefore proper under TEX. FAM. CODE ANN. §§ 52.01(a)(1) and 52.02(a)(3). The validity of the state court order has not been challenged, and this Court refuses to investigate into the accuracy or truthfulness of the affidavits and reports that were before that court in making its determinations. Any issue of allegedly actionable malpractice in Jonathan's diagnosis or of misconduct on the part of CPS workers does not rise to the level of a constitutional violation, and in any case is not presented to this Court. Although the Court is sympathetic to Jonathan's plight, no cause of action is viably presented in the Amended Complaint with respect to these allegations, and the Court is at a loss as to why these paragraphs were included in the Amended Complaint, other than to embellish upon the unfortunate consequences of Ms. Sustaita–Thompson's arrest and conviction.

█ Finally, Plaintiff has failed to state a claim upon which relief may be granted for Jonathan's malicious prosecution. On the contrary, it appears that Jonathan was never prosecuted at all for the arson fire. Plaintiff herself admits that any charges filed against Jonathan were dismissed, and only alleges as

the basis for her charge of malicious prosecution that Jonathan was "coerced" to confess to a crime he did not commit and that the police held a public conference announcing the confession. These facts fail to establish that Jonathan was *prosecuted* for any crime. Mere interrogation or announcing the confession of a suspect does not constitute "prosecution" for that crime.

The fact that another individual subsequently admitted to the April 13, 1995 arson fire to which Jonathan Sustaita originally confessed does not affect the inquiry into whether there was malicious prosecution, nor would it affect the false arrest or false imprisonment claims. The inquiry is not whether the actions of the police were reasonable in light of all things that occurred subsequently, but based on what was known or reasonably apparent to them at the time. In this case, it is not relevant that the police were wrong in suspecting Jonathan Sustaita of committing the arson fire. What is relevant is the information possessed at the time of the investigation. Undoubtedly, being interrogated for a crime you did not commit is an unpleasant experience. However, allowing a cause of action to stand for malicious prosecution simply because the police in good faith suspected and interrogated the wrong person would unreasonably fetter the ability of police to detain or interrogate suspects and dampen the ardor of criminal investigations. This Court refuses to require that police have proof beyond a reasonable doubt before they even detain and interrogate suspects. Accordingly, for the reasons stated above, the individual Defendants' Motion to Dismiss the claims of false arrest, false imprisonment, and malicious prosecution, in their official and individual capacities, is hereby **GRANTED** and all of these claims are **DISMISSED WITH PREJUDICE**. Furthermore, the claims against the City of Galveston are also *sua sponte* **DISMISSED WITH PREJUDICE**.

## B. EXCESSIVE FORCE

■ Plaintiff also alleges that the officers utilized excessive force when they arrested Ms. Sustaita–Thompson and took Jonathan Sustaita into custody. Claims involving the use of excessive force are based upon an alleged violation of the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 1867–68, 104 L.Ed.2d 443 (1989). In order to sustain a cause of action for use of excessive force, the evidence must establish that the use of force was "objectively unreasonable." *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872. The Fifth Circuit has established a three-part test for consideration of a claim of excessive force brought under § 1983. In order to prevail under this statute, the plaintiff must show (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive to the need, and (3) the excessiveness of which was objectively unreasonable. *Fontenot v. Cormier,* 56 F.3d 669, 674 (5th Cir.1995); *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (*en banc* ).

■ Plaintiff correctly asserts that the Fifth Circuit has rejected the requirement that a plaintiff show a *significant* injury. *Harper v. Harris County,* 21 F.3d 597, 600 (5th Cir.1994). However, the conclusion she draws from this, that accordingly any injury will be sufficient to maintain a cause of action for excessive force, is an incorrect statement of the law. The Fifth Circuit has stated that a plaintiff must have "suffered at least some injury." *Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir.1996). It remains unresolved, however, whether mere psychological injury is sufficient to maintain an excessive force action. *Id.* at 435 n. 10. This is particularly true in light of the Fifth Circuit's insistence that claims of excessive force are compensable only to the extent that an injury is caused *directly* by the use of excessive force, not, as alleged here, as having been caused by an alleged use of force in addition to allegations of intimidation and verbal threats. *See Johnson,* 876 F.2d at 480. Plaintiff herself admits that neither she nor Jonathan have suffered any physical injuries and that their injuries are psychological.[2] Plaintiff cites the Seventh Circuit for the suggestion that no

2. Although the Response to the Motion to Dismiss alleges that Ms. Sustaita–Thompson and Jonathan were bruised when the officers threw them to the floor, these allegations are not present in the Complaint.

physical injury is required when a police officer holds a gun to the head of a nine-year-old child and threatens to pull the trigger, but such dramatic facts were not even alleged in this case. Rather, Plaintiff merely alleges that Jonathan was handcuffed, thrown to the floor, and threatened. The Fifth Circuit has yet to award damages for psychological injuries alone. This Court will not do so now. Accordingly, as Plaintiff has failed to allege any evidence of actionable injury, the individual Defendants' Motion to Dismiss for Failure to State a Claim, in their official and individual capacities, is hereby **GRANTED** and the Plaintiff's § 1983 excessive force claims are **DISMISSED WITH PREJUDICE.**

## C. CONSPIRACY CLAIMS

Plaintiff also alleges that the County District Attorney's Office, the individual Defendants, and the Galveston Police Department conspired by deliberately preventing Ms. Sustaita–Thompson's court-appointed attorney to inspect her file at the District Attorney's Office and by preventing a police sergeant [3] from testifying before the Grand Jury that was charged with investigating Jonathan Sustaita's arrest. Plaintiff correctly acknowledges that the District Attorney is absolutely immune in his individual capacity, but asserts that the County is nonetheless liable because the District Attorney is a policy maker, and because it was the custom of the District Attorney's Office to overlook complaints about Officers Giles and Morris.

■ To establish a claim for municipal liability under § 1983, a plaintiff must identify in the pleadings: (1) a policy (2) of a local governmental entity's final policy maker (3) that caused (4) the plaintiff to be subjected to a deprivation of a constitutional right. *Grandstaff v. City of Borger,* 767 F.2d 161,

169 (5th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). In order to ascertain a defendant's liability under section 1983, the Court must isolate the precise constitutional violation of which a plaintiff complains. Indeed, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

■ First, Ms. Sustaita–Thompson's claim that her constitutional rights were violated by the District Attorney's refusal to turn over her file is unfounded. Generally, a criminal defendant has no constitutional right to review the District Attorney's file prior to trial. However, the Supreme Court has established that a prosecutor must disclose evidence if it is both favorable to the defendant and material to the defendant's guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). Ms. Sustaita–Thompson has failed to state a claim based upon her *Brady* rights in this case. Her Amended Complaint merely claims that the District Attorney's Office "intentionally prevented the court appointed attorney of Mrs. Sustaita–Thompson from reviewing the file." Pl.'s Am. Compl. at ¶ 53. Without more facts establishing that the file contained favorable and material evidence that the Ms. Sustaita–Thompson could not have acquired on her own with reasonable diligence, she has failed to state a claim of a constitutional violation.[4] *See West v. Johnson,* 92 F.3d 1385, 1399–1400 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997).

Next, the allegation that the District Attorney violated Jonathan Sustaita's constitutional rights when he refused to allow a particular witness to testify before a Grand

---

**3.** The Court notes that the Amended Complaint is inconsistent in its allegations with regard to specifically whom the District Attorney prevented from testifying in front of the Grand Jury. In ¶ 54 of the Amended Complaint, Plaintiff alleges that a Captain Boyle was denied his request to testify, while ¶ 76 indicates that it was a Sergeant Mitchell. The Amended Complaint is rife with factual confusion such as this.

**4.** Plaintiff also claims in her Response to Galveston County's Motion to Dismiss that the file included "exculpatory information." Such bald assertions are insufficient to meet the *Brady* test without more facts to support them. Furthermore, the Court notes that the Response was filed June 2, 1997, and the Amended Complaint, filed over a month later on July 9, 1997, fails to assert that the file contained anything exculpatory.

Jury is completely unfounded. This allegation fails to allege the violation of any constitutional right at all.

Even if Plaintiff had alleged the violation of a valid constitutional right, she has failed to show the existence of a custom or policy under which the County of Galveston could be held liable. First, the District Attorney was not acting as a county policy maker. It is well established in Texas that "when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county." *Esteves v. Brock,* 106 F.3d 674, 678 (5th Cir.1997); *see also Krueger v. Reimer,* 66 F.3d 75, 77 (5th Cir.1995). The allegations relating to the District Attorney both involve his duties related to enforcing state penal law; first, in refusing to allow Ms. Sustaita–Thompson's attorney to review her file before trial, and second, in refusing to allow a witness to testify before a Grand Jury. Therefore, this Court finds that the District Attorney was acting in his capacity as a state, rather than county, official.

■ Moreover, the fact that the District Attorney refused to allow a particular witness to testify about Giles and Morris before the Grand Jury investigating the circumstances surrounding Jonathan's arrest utterly fails to allege that the County of Galveston had a "custom" of ignoring complaints about the officers. The only basis for the Plaintiff's claim of an unconstitutional custom is that the District Attorney must protect Giles and Morris because they have been the leading arresting officers in several highly publicized murder convictions in Galveston County. Plaintiff contends that, because the District Attorney does not want to respond to requests for new trials in these cases, he has made it a custom to protect their credibility. Such bald contentions without *any* evidence supporting them utterly fail to state any facts which would support a claim that it was a custom of the District Attorney's office to ignore complaints about Giles and Morris. In fact, claims as general and circumstantial as this could likely be asserted against the County for the actions of each and every officer who has ever testified in a criminal case. Therefore the claim that the actions of the District Attorney constituted a custom of the County are completely unfounded. Accordingly, for the reasons stated above, Defendant County of Galveston's Motion to Dismiss is hereby **GRANTED** and all claims against the County of Galveston are **DISMISSED WITH PREJUDICE.**

■ The dismissal of the conspiracy claims against the County of Galveston necessitates the dismissal of the conspiracy claims against the individual Defendants and against the City of Galveston as well. A single legal entity, such as the Galveston Police Department and its officers, is incapable of conspiring with itself for the purposes of § 1983. *See Baldwin v. University of Texas Medical Branch at Galveston,* 945 F.Supp. 1022 (S.D.Tex.1996), *aff'd,* 122 F.3d 1066 (5th Cir.1997); *Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir.1994). It is a long-standing rule in this Court and in the Fifth Circuit that "a corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard,* 30 F.3d at 653 (citing *Nelson Radio & Supply Company v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir.1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953)). The Fifth Circuit and several district courts within the Circuit have applied this "intracorporate conspiracy" doctrine to entities other than corporations. *See, e.g., Baldwin,* 945 F.Supp. at 1034 (applying the doctrine to a medical school and its employees); *Hilliard,* 30 F.3d at 653 (finding that the doctrine applied to a school board and its members); *Moody v. Jefferson Parish School Board,* 803 F.Supp. 1158, 1166 (E.D.La.1992), *aff'd,* 2 F.3d 604 (5th Cir.1993) (school board, principal, vice-principal, and various teachers are all employed by the Jefferson Parish School Board and, thus, are a single entity); *Hankins v. Dallas Indep. Sch. Dist.,* 698 F.Supp. 1323, 1330 (N.D.Tex.1988) (high school and its officials constitute a single entity); *Chambliss v. Foote,* 421 F.Supp. 12, 15 (E.D.La. 1976), *aff'd,* 562 F.2d 1015 (5th Cir.1977), *cert. denied,* 439 U.S. 839, 99 S.Ct. 127, 58 L.Ed.2d 137 (1978) (university and its officials considered a single legal entity).

Both of the individual Defendants here are employees of the Galveston Police Department. Therefore, for the purposes of Plaintiff's § 1983 conspiracy claim, the Galveston Police Department and its employees constitute a single legal entity which is incapable of conspiring with itself. Accordingly, the individual Defendants' Motion to Dismiss the § 1983 conspiracy claim is hereby **GRANTED**, and these claims are **DISMISSED WITH PREJUDICE**. The claims against the City of Galveston are also *sua sponte* **DISMISSED WITH PREJUDICE** for the above reasons.

## IV. STATE LAW CLAIMS

### A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff claims that the actions of the individual Defendants Giles and Morris were intentional, extreme, and outrageous, and caused the Plaintiff and Jonathan Sustaita to suffer severe mental distress. In light of the dismissal of the claims upon which the intentional infliction of emotional distress claim is based, this claim requires dismissal as well. For completeness, the Court will nevertheless analyze the merits of the claim.

The allegations of conduct supporting a claim for intentional infliction of emotional distress are not specified, but as far as the Court can tell constitute the following: (1) that during the arrest, Giles and Morris forced the rear door of the Plaintiff's home open, entered the residence, "and there was then a lot of screaming and yelling," that the mother and son were handcuffed and "thrown to the ground," and that they were threatened by the officers; (2) that the officers coerced Jonathan Sustaita to confess to the arson by interrogating him and putting words in his mouth; and (3) that Giles and Morris did not make a report of the interrogation and confession, claiming that it had been stolen, and attempted to interfere with the investigation of other suspects in the case.

■■■■ Texas law establishes a high standard for establishing the tort of intentional infliction of emotional distress, and Plaintiff's allegations, even if completely true,

fall well short of the requirements. To prevail on a claim of intentional infliction of emotional distress in Texas, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir.1993) (citing *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989)). Whether conduct is extreme and outrageous is initially a question of law for the Court. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). Liability will only be found " 'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* (quoting RESTATEMENT (SECOND) TORTS § 46 cmt. d). Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir.1991).

■■■■ Plaintiff's allegations do not even begin to rise to the level of outrageousness required to state a cause of action for intentional infliction of emotional distress, and frankly the Court is mystified that such a claim was even alleged. The allegations show at most two police officers who were perhaps overly aggressive in the manner of arresting Ms. Sustaita–Thompson and interrogating Jonathan Sustaita. The Court realistically assumes that almost all arrests are noisy, unpleasant affairs and that physical manipulation of the arrestee occurs frequently. The Court further assumes that most interrogations into capital murder cases are intense, markedly stressful confrontations. Indeed, the very purpose of such interrogation is to break down the accused. In her Amended Complaint, Plaintiff seems to point to the totality of the circumstances surrounding the arrest and the separation of the mother and son as evidence of the outrageous conduct of the officers. They also detail the clinical depression which Jonathan has suffered as a result of the events. Unfortunate as these circumstances may be,

they do not give rise to a tort claim. Giles and Morris had a valid arrest warrant for the mother on a charge to which she later pled *nolo contendere*. It is not surprising that Jonathan suffered depression from watching his mother be arrested, being taken into custody himself, being interrogated for capital murder, and thereafter being separated from his mother for over a year. The Court realizes that this must have been a very difficult and stressful time for Jonathan. However, as a matter of law, the facts as alleged simply do not rise to the level of intentional infliction of emotional distress. Accordingly, the Court *sua sponte* **DISMISSES WITH PREJUDICE** Plaintiff's claims of intentional infliction of emotional distress against the individual Defendants.

## B. ABUSE OF PROCESS

 Under Texas law, an action for abuse of process presupposes an originally valid and regular process duly and properly issued. *Futerfas v. Park Towers,* 707 S.W.2d 149, 160 (Tex.Civ.App.—Dallas 1986, writ ref'd n.r.e.). After such process has been issued, a plaintiff must prove three elements to bring an abuse of process claim: (1) that the defendant made an illegal, improper, or perverted use of process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, improper, or perverted use of process; and (3) that damage resulted to the plaintiff as a result of such irregular act. *Id.*

The Plaintiff's Amended Complaint fails to state facts supporting a claim for abuse of process. The arrest warrant for Ms. Sustaita–Thompson was clearly more than a pretext for arresting Jonathan Sustaita, since she pled *nolo contendere* to the charges. As discussed previously, Jonathan was taken into custody when his mother was arrested pursuant to the Texas Family Code, and this did not constitute an arrest. Thus there was no abuse of the arrest warrant for Ms. Sustaita–Thompson. Finally, the Plaintiff has failed to show that Jonathan has sustained

any particular damages as a result of being taken into custody when his mother was arrested.[5]

 Ms. Sustaita–Thompson makes much of the fact that the arrest warrant improperly charged her with contributing to the delinquency of her 17–year old son Edward Sustaita rather than Jonathan Sustaita, and that Ms. Sustaita–Thompson could not have contributed to the delinquency of Edward Sustaita because he was already in the custody of the State at the time of the arrest. Ms. Sustaita–Thompson does not contest the substantive validity of the arrest warrant. Any defect on the face of the warrant should have been raised in state court before now. By pleading *nolo contendere* to the charges, Ms. Sustaita–Thompson has waived any non-jurisdictional defects in the warrant. *See Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983), *cert. denied sub nom. Smith v. McKaskle,* 466 U.S. 906, 104 S.Ct. 1685, 80 L.Ed.2d 159 (1984); *McMillin v. Beto,* 447 F.2d 453, 454 (5th Cir.1971). Thus the fact that the wrong minor was named in the arrest warrant cannot be the basis for a claim of abuse of process. Accordingly, for the reasons stated above, Plaintiff's claims of abuse of process are hereby *sua sponte* **DISMISSED WITH PREJUDICE.**

## V. QUALIFIED IMMUNITY

 The individual Defendants in this case argue that they should not be subjected to suit in their individual capacities because they are protected by the doctrine of qualified immunity. Having decided the case on other grounds, the Court need not reach this issue. Nevertheless, the Court will address the qualified immunity issue because it was raised in the individual Defendants' Motion to Dismiss. Insofar as the individual Defendants are sued in their individual capacity, the Court finds that they are protected by qualified immunity. The doctrine of qualified immunity is designed to protect a public official from liability in his or her individual capacity where the official's conduct concerns the performance of discretionary functions

---

5. The Plaintiff has generally alleged that Jonathan suffered severe emotional damages, but has not shown that these damages were the result of any acts of the individual Defendants other than the Plaintiff's lawful arrest and the lawful interrogation of Jonathan for a suspected crime.

and does not violate clearly established statutory or constitutional rights of which a reasonable person would know. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The inquiry requires the Court to ascertain whether a plaintiff's allegations, if accepted as true, state a claim for a violation of any rights secured under the Constitution. *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992); *see Siegert v. Gilley,* 500 U.S. 226, 227, 111 S.Ct. 1789, 1791, 114 L.Ed.2d 277 (1991). Additionally, the Fifth Circuit requires the plaintiff to "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense immunity." *Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985). Clearly, if a plaintiff's claims do not specifically and clearly establish a constitutional violation, the claims against the individual Defendants must be dismissed. Yet, if the right is clearly established, then the Court must examine the "objective reasonableness" of the Defendants' conduct in accordance with established law. *Salas,* 980 F.2d at 305–06.

As discussed previously, the Plaintiff here has failed to demonstrate the violation of a clearly established constitutional right. Even accepting the Plaintiff's allegations as true, the actions of the individual Defendants do not rise to the level of a constitutional violation. Consequently, the Plaintiff has failed to allege facts sufficient to show that no reasonable officer could have believed that the conduct of Giles and Morris was within federal constitutional boundaries. Accordingly, for the reasons stated above, all claims against Defendants Giles and Morris in their individual capacities are **DISMISSED WITH PREJUDICE.**

## VI. CONCLUSION

For the reasons set forth above, the Defendants' Motions to Dismiss for Failure to State a Claim are hereby **GRANTED** and all claims against *all* Defendants are **DISMISSED WITH PREJUDICE.** Furthermore, the claims against Defendant City of Galveston and the claims of abuse of process and intentional infliction of emotional distress are *sua sponte* **DISMISSED WITH PREJUDICE.** All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date. The parties are **ORDERED** to file no further pleadings before this Court, particularly including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of the submission of the instant pleadings. All further relief shall be sought in the United States Court of Appeals for the Fifth Circuit.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For time reasons set forth in the Court's Order Granting Motions to Dismiss entered this date, Defendants' Motions to Dismiss for Failure to State a Claim are hereby **GRANTED** and all claims against *all* Defendants are **DISMISSED WITH PREJUDICE.** Furthermore, the claims against Defendant City of Galveston and the claims of abuse of process and intentional infliction of emotional distress are *sua sponte* **DISMISSED WITH PREJUDICE.** All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**