OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



June 7, 2000

The Honorable Florence Shapiro
Chair, Committee on State Affairs
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0229

Re: Whether law enforcement officers are authorized to take a seventeen-year-old into custody simply because he or she has been reported as a missing child under chapter 63 of the Code of Criminal Procedure, and related questions (RQ-0169-JC)

Dear Senator Shapiro:

On behalf of the City of Plano Police Department (the "Police Department"), you ask whether police officers are authorized to take a seventeen-year-old into custody simply because he or she has been reported as a missing child under chapter 63 of the Code of Criminal Procedure. We conclude that article 63.009(g) requires a law enforcement officer who locates a seventeen-year-old who has been reported as a missing child to take possession of the child and to deliver the child to the person entitled to his or her possession or to the Department of Protective and Regulatory Services. *See* TEX. CODE CRIM. PROC. ANN. art. 63.009(g) (Vernon Supp. 2000). We also conclude that the detention of an unemancipated seventeen-year-old against his or her wishes for the purpose of returning the child to his or her parent or guardian does not violate the child's constitutional rights. In addition, we conclude that an officer may use force to take possession of a missing child, but only to the degree the officer reasonably believes is necessary to safeguard or promote the child's welfare consistent with the protective purpose of article 63.009(g).

Chapter 63 of the Code of Criminal Procedure creates a state clearinghouse for information on missing children and missing persons in the Department of Public Safety and establishes various requirements regarding missing children and missing persons for state agencies, local law enforcement agencies, and schools. *See id.* arts. 63.002, .003, .008, .009, .020. Article 63.009, among other things, requires a local law enforcement agency that receives a report of a missing child or missing person to investigate the present location of the child or person and to file the information with the state clearinghouse and the national crime information center. *See id.* art. 63.009(a). These requirements apply to municipal police departments and county sheriff's departments. *See id.* art. 63.001(8) (defining "law enforcement agency").

The Police Department's questions specifically pertain to the duties imposed on law enforcement officers by subsection (g) of article 63.009. For purposes of these questions, the pertinent subsections of article 63.009 are as follows:

> (a) Local law enforcement agencies, on receiving a report of a missing child or a missing person, shall:
>
> > (1) if the subject of the report is a child and the well-being of the child is in danger or if the subject of the report is a person who is known by the agency to have or is reported to have chronic dementia, including Alzheimer's dementia, whether caused by illness, brain defect, or brain injury, immediately start an investigation in order to determine the present location of the child or person;
> >
> > (2) if the subject of the report is a child or person other than a child or person described by Subdivision (1), start an investigation with due diligence in order to determine the present location of the child or person;
>
> . . . .
>
> > (g) On determining the location of a child under Subsection (a)(1) or (2), other than a child who is subject to the continuing jurisdiction of a district court, an officer *may* take possession of the child and shall deliver or arrange for the delivery of the child to a person entitled to possession of the child. If the person entitled to possession of the child is not immediately available, the law enforcement officer shall deliver the child to the Department of Protective and Regulatory Services.

*Id.* art. 63.009 (footnote omitted) (emphasis added). Subsection (g) governs the conduct of a law enforcement officer who determines the location of a missing child pursuant to an investigation into a report under subsection (a)(1) or (2). The version of subsection (g) published in Vernon's includes a footnote after the word "may," in the phrase "an officer *may* take possession of the child." The footnote indicates that one version of subsection (g) enacted by the Seventy-sixth Legislature used the word "shall" in place of the word "may." The Police Department's questions are premised on the belief that subsection (g) uses the word "shall" and imposes a mandatory duty on officers to take possession of a missing child. *See* Letter from Bruce D. Glasscock, Chief of Police, Plano Police Department, to Senator Florence Shapiro, at 1 (Dec. 3, 1999) (on file with Opinion Committee) [hereinafter "Police Department Letter"]. Therefore, we must address the proper wording of subsection (g) before turning to the Police Department's specific questions.

The missing children and persons provisions now in chapter 63 of the Code of Criminal Procedure were originally enacted as a chapter in the Human Resources Code.[1]  In 1997, the Seventy-fifth Legislature enacted the precursor to subsection (g), which used the word "may," as section 79.008(a)(4) of the Human Resources Code.[2]  The Seventy-fifth Legislature also moved the missing children and persons provisions from chapter 79 of the Human Resources Code to chapter 62 of the Code of Criminal Procedure.[3]

The Seventy-sixth Legislature enacted three bills affecting subsection (g) – Senate Bill 1368, House Bill 605, and House Bill 668.  While the first two bills used the word "may," House Bill 668 replaced "may" with "shall."  Senate Bill 1368, a nonsubstantive cleanup bill,[4] moved section 79.008(a)(4) of the Human Resources Code to article 62.009(g) of the Code of Criminal Procedure[5] and renumbered the provisions of chapter 62 of the Code of Criminal Procedure in chapter 63.[6] House Bill 605 relocated section 79.008(a)(4) of the Human Resources Code to article 62.009(g) of the Code of Criminal Procedure without changing "may" to "shall."[7]  House Bill 668, however, relocated section 79.008(a)(4) of the Human Resources Code to article 62.009(g) of the Code of Criminal Procedure *and* amended the provision to change "may" to "shall."  *See* House Bill 668, *enacted as* Act of May 26,1999, 76th Leg., R.S., ch. 685, § 5, 1999 Tex. Gen. Laws 3256, 3257 (purpose of act "to relocate *and amend* language" enacted in 1997) (emphasis added).  Significantly, it also amended article 2.13 of the Code of Criminal Procedure, which establishes duties and powers of peace officers, to provide in subsection (c) that "[i]t is the duty of every officer to take possession of a child under Article 62.009(g)."  *Id.* § 1.  Thus, House Bill 668 imposes an affirmative duty on an officer to take possession of a missing child who he or she has located.  *See id.* §§ 1, 5; *see also* TEX. GOV'T CODE ANN. § 311.016(2) (Vernon 1998) (the term "shall" "imposes a duty" unless context in which it appears "necessarily requires a different construction").

The Code Construction Act provides that when amendments to the same statute are enacted in the same session without reference to each other, the statutes must be harmonized if possible. *See* TEX. GOV'T CODE ANN. § 311.025(b) (Vernon 1998).  If the statutes are irreconcilable, the latest in date of enactment prevails. *See id.*  The language of Senate Bill 1368, House Bill 605, and House Bill 668 conflict to the extent the first two bills provide that an officer "may" take possession of a

---

[1]*See* Act of May 6, 1985, 69th Leg., R.S., ch. 132, § 1, 1985 Tex. Gen. Laws 614; Act of May 1, 1987, 70th Leg., R.S., ch. 167, § 5.01(a)(26), 1987 Tex. Gen. Laws 1338, 1358.

[2]*See* Act of Apr. 25, 1997, 75th Leg., R.S., ch. 51, § 2, 1997 Tex. Gen. Laws 120, 121.

[3]*See* Act of May 26, 1997, 75th Leg., R.S., ch. 1427, § 1, 1997 Tex. Gen. Laws 5487.

[4]*See* Senate Bill 1368, Act of Apr. 23, 1999, 76th Leg., R.S., ch. 62, §§ 1.01, .02, 1999 Tex. Gen. Laws 127.

[5]*See id.* § 3.12, at 133.

[6]*See id.* § 19.01(8)(A), at 412.

[7]*See* House Bill 605, Act of May 10, 1999, 76th Leg., R.S., ch. 200, § 2, 1999 Tex. Gen. Laws 677, 678.

missing child and the latter provides that an officer "shall" take possession of a missing child. Senate Bill 1368 provided that "[i]f any provision of this Act conflicts with a statute enacted by the 76th Legislature, Regular Session, 1999, the statute controls."[8] Therefore, Senate Bill 1368's version of subsection (g), which conflicts with the House Bill 668 version, does not control. Accordingly, only House Bills 605 and 668 must be reconciled.

For purposes of the Code Construction Act's provision relating to conflicting bills, "the date of enactment is the date on which the last legislative vote is taken on the bill enacting the statute." *Id.* § 311.025(d). The last legislative vote was taken on House Bill 605 on May 10, 1999,[9] while the last legislative vote was taken on House Bill 668 on May 26, 1999.[10] Accordingly, House Bill 668, the later enacted provision, prevails. Therefore, the first sentence of subsection (g) of article 63.009 provides as follows:

> On determining the location of a child under Subsection (a)(1) or (2), other than a child who is subject to the continuing jurisdiction of a district court, an officer *shall* take possession of the child and shall deliver or arrange for the delivery of the child to a person entitled to possession of the child.

We also note that the reference in article 2.13(c) of the Code of Criminal Procedure to article 62.009(g) must be construed as a reference to article 63.009(g), as Senate Bill 1368 renumbered the provisions of chapter 62 in chapter 63. *See* note 6 *supra.* Thus, subsection (c) of article 2.13 should be construed to provide that "[i]t is the duty of every officer to take possession of a child under Article 63.009(g)."

We now turn to the Police Department's specific questions. These questions turn on the different definitions of the term "child" in chapter 63 of the Code of Criminal Procedure and title 3 of the Family Code. Title 3 of the Family Code, the Juvenile Justice Code, defines the term "child" to mean a person who is "ten years of age or older and under 17 years of age" or "seventeen years of age or older and under 18 years of age who is alleged or found to have engaged in delinquent conduct or conduct indicating a need for supervision as a result of acts committed before becoming 17 years of age." TEX. FAM. CODE ANN. § 51.02(2) (Vernon Supp. 2000). Both the terms "delinquent conduct" and "conduct indicating a need for supervision," the two categories of juvenile offenses, include "the voluntary absence of a child from his home without the consent of his parent or guardian for a substantial length of time or without intent to return." *Id.* § 51.03(a)(2)(C), (b)(3). The Juvenile Justice Code authorizes a law enforcement officer to take a child into custody if there is probable cause that the child has engaged in delinquent conduct or conduct indicating a need for

---

[8]Act of Apr. 23, 1999, 76th Leg., R.S., ch. 62, § 1.02(b), 1999 Tex. Gen. Laws 127.

[9]*See* S.J. OF TEX., 76th Leg., R.S. 1589 (1999).

[10]*See* S.J. OF TEX., 76th Leg., R.S. 2906 (1999).

supervision. *See id.* § 52.01(a)(3)(B). Under the Juvenile Justice Code, however, a person who voluntarily leaves home after reaching seventeen years of age does not commit a juvenile offense and may not be taken into custody for doing so. *See id.* §§ 51.02(2)(A), (B); 51.03(a)(2)(C), (b)(3).

On the other hand, subsection (g) of article 63.009 requires an officer to take possession of a seventeen-year-old who has been reported as missing, even a seventeen-year-old who has voluntarily left the care and control of his legal custodian without the custodian's consent and without intent to return. This is because the term "child" is defined for purposes of chapter 63 of the Code of Criminal Procedure as a person under eighteen years of age, *see* TEX. CODE CRIM. PROC. ANN. art. 63.001(1) (Vernon Supp. 2000), and a "missing child" is defined as:

> a child whose whereabouts are unknown to the child's legal custodian, the circumstances of whose absence indicate that:
>
> (A)   the child did not voluntarily leave the care and control of the custodian, and the taking of the child was not authorized by law;
>
> (B)   *the child voluntarily left the care and control of his legal custodian without the custodian's consent and without intent to return*; or
>
> (C)   the child was taken or retained in violation of the terms of a court order for possession of or access to the child.

*Id.* art. 63.001(3) (emphasis added); *see also id.* art. 63.001(4)(C) ("Missing child" or "missing person" also includes a person of any age who is missing and "is unemancipated as defined by the law of this state.").

The Police Department asks five questions about an officer's duty with respect to a missing seventeen-year-old under chapter 63 of the Code of Criminal Procedure. These questions stem from the anomaly in the law that a seventeen-year-old is an adult for purposes of criminal statutes but, as we shall discuss in greater detail, a child for purposes of civil law. *Compare* TEX. FAM. CODE ANN. § 51.02(2) (Vernon Supp. 2000) (Juvenile Justice Code applicable only to conduct committed prior to age seventeen), *and* TEX. PEN. CODE ANN. § 8.07 (Vernon Supp. 2000) (age affecting criminal responsibility), *with* TEX. FAM. CODE ANN. § 101.003(a) (Vernon 1996) (defining child for purposes of provisions governing parent-child relationship to include person under eighteen years of age), *and* TEX. CIV. PRAC. & REM. CODE ANN. § 129.001 (Vernon 1997) (providing that age of majority is eighteen). We wish to preface our response to these questions with the following observations, which inform our analysis. Article 63.009(g) is not a penal statute nor is it related to juvenile misconduct; its purpose is to locate missing children, to ensure their safety, and to reunite them with their parents or guardians. Furthermore, taking possession of a child under article 63.009(g) is not

tantamount to an arrest for criminal behavior. The custody the statute contemplates is protective rather than penal in nature.

The first question posed by the Police Department is whether "police officers [are] authorized to take a person who is over the age of seventeen, but not yet eighteen, into custody simply because the person has been listed as 'missing'?" Police Department Letter at 2. As we have explained, subsection (g) of article 63.009 affirmatively requires an officer to take possession of a child reported as missing. *See supra* discussion pp. 2-4. Under chapter 63, a child is defined as a person under eighteen years of age. *See* TEX. CODE CRIM. PROC. ANN. art. 63.001(1) (Vernon Supp. 2000). Thus, in answer to this question, a law enforcement officer *must* take a person who is over the age of seventeen, but not yet eighteen, into custody, simply because the person has been listed as "missing." The Police Department appears concerned that the seventeen-year-old may wish to remain "missing." In this regard, we note that a seventeen-year-old who has voluntarily left the care and control of his legal custodian without the custodian's consent and without intent to return may be reported as missing. *See id.* art. 63.001(3)(B). The fact that a child reported as missing is seventeen and has left home voluntarily does not mitigate the duty of an officer to take possession of the child.

In a related question, the Police Department asks: "What if the person does not want to be detained?" Police Department Letter at 2. It is not relevant under subsection (g) whether the seventeen-year-old wishes to be taken into protective custody. Again, under chapter 63 a child, including a seventeen-year-old, is "missing" even if the child "voluntarily left the care and control of his legal custodian without the custodian's consent and without intent to return." TEX. CODE CRIM. PROC. ANN. art. 63.001(3)(B) (Vernon Supp. 2000). An officer has a duty under article 63.009(g) to take possession of a seventeen-year-old who has been reported as missing even if the seventeen-year-old does not wish to be detained.

The Police Department expresses concern that detaining a seventeen-year-old against his or her wishes constitutes an arrest and may violate the seventeen-year-old's constitutional rights because running away from home at the age of seventeen is not an offense under the Juvenile Justice Code. The Police Department poses the following dilemma: "[D]o we 'arrest' a person . . . who has committed no crime, or do we ignore what appears to be a statutory mandate in order to avoid an allegation of an unconstitutional seizure." Police Department Letter at 2. As explained below, in our view this concern is unfounded.

The Police Department describes the detention of a seventeen-year-old under article 63.009(g) as an arrest. As we believe that the custody the statute contemplates is protective rather than penal in nature, we do not agree with this characterization. Furthermore, we do not believe that a peace officer who takes possession of a seventeen-year-old under the authority of article 63.009(g) and detains the child against his or her will violates the child's constitutional rights. Chapter 63 provides a system for a parent or guardian to report to a law enforcement agency that a child is missing and to have this information included in a statewide database, thereby informing law enforcement agencies of the fact that the child is missing and of the parent or guardian's desire to have the child returned. It is entirely consistent with the laws of this state and constitutional law to

include seventeen-year-olds who voluntarily leave the care and control of their parents or guardians in this system as missing children.

Under the laws of this state, the age of majority is eighteen years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 129.001 (Vernon 1997). Under title 5 of the Family Code, which governs the parent-child relationship, a "child" is defined as "a person under 18 years of age who is not and has not been married or who has not had the disabilities of minority removed for general purposes," TEX. FAM. CODE ANN. § 101.003(a) (Vernon 1996), or, in other words, a person seventeen years of age or younger who has not been emancipated by marriage or by court order, *see id.* § 1.104 (Vernon 1998) (disabilities of minority removed by marriage); ch. 31 (Vernon 1996 & Supp. 2000) (procedures for child to petition court to remove disabilities of minority). A parent or legal guardian has a statutory right under the Family Code to have physical possession of his or her unemancipated child and to establish the child's residence. *See id.* § 151.003(a)(1) (Vernon 1996) (rights of parents); TEX. PROB. CODE ANN. § 767 (Vernon Supp. 2000) (powers and duties of legal guardians). Therefore, under the laws of this state, a parent or guardian has a right to physical possession of an unemancipated seventeen-year-old who has left home without the parent's or guardian's permission.

Furthermore, as the United States Supreme Court has recognized, unemancipated seventeen-year-olds' constitutional liberty rights are not as great as adults' and are subject to the control of their parents or guardians: "Traditionally at common law, and still today, unemancipated minors lack some of the most fundamental rights of self-determination -- including even the right of liberty in its narrow sense, i.e., the right to come and go at will. They are subject, even as to their physical freedom, to the control of their parents or guardians." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654 (1995). Furthermore, a child's liberty interest may, in appropriate circumstances, be subordinated to the state's interest in preserving and promoting the welfare of the child. *See Schall v. Martin*, 467 U.S. 253, 265 (1984) ("[J]uveniles, unlike adults, are always in some form of custody. Children, by definition, are not assumed to have the capacity to take care of themselves. They are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as parens patriae. In this respect, the juvenile's liberty interest may, in appropriate circumstances, be subordinated to the State's 'parens patriae' interest in preserving and promoting the welfare of the child.") (citations omitted).

In sum, given the statutory right of a parent or guardian to physical possession of his or her child and that an unemancipated child's liberty rights are subject to parental and state control, we conclude that the involuntary detention of an unemancipated seventeen-year-old under article 63.009(g) for the purpose of returning the child to his or her parent or guardian does not amount to an unconstitutional deprivation of liberty. Furthermore, we note that a law enforcement officer who acts reasonably to take possession of a child under the authority of article 63.009(g) would be shielded from civil liability under the qualified immunity doctrine. A plaintiff complaining of the officer's conduct would have to establish that the officer was not entitled to qualified immunity, a difficult burden to bear. *See, e.g., Mackenzie v. Cartagena*, 1999 WL 1201786 (N.D. Tex. 1999) (granting summary judgment against plaintiff who claimed that officer violated her constitutional rights by taking possession of her child under precursor to article 63.009(g) on basis that officer was

entitled to qualified immunity); *see also* TEX. FAM. CODE ANN. § 262.003 (Vernon 1996) ("A person who takes possession of a child without a court order is immune from civil liability if, at the time possession is taken, there is reasonable cause to believe there is an immediate danger to the physical health or safety of the child.").

With respect to detention, the Police Department also asks how long an officer may detain a seventeen-year-old. *See* Police Department Letter at 2. Article 63.009(g) requires an officer who takes possession of a child reported as missing "to deliver or arrange for the delivery of the child to a person entitled to possession of the child. If the person entitled to possession of the child is not immediately available, the law enforcement officer shall deliver the child to the Department of Protective and Regulatory Services." TEX. CODE CRIM. PROC. ANN. art. 63.009(g); *see also* TEX. FAM. CODE ANN. § 262.007 (Vernon Supp. 2000) (law enforcement officer "who, during a criminal investigation relating to a child's custody, discovers that a child is a missing child and believes that a person may flee with or conceal the child shall take possession of the child" and shall deliver child to person entitled to take possession of child or Department of Protective and Regulatory Services). Thus, an officer may detain a seventeen-year-old who has been reported as missing until the child has been reunited with his parent or guardian, if that person is immediately available. If that person is not immediately available, the officer should deliver the child to the Department of Protective and Regulatory Services. In this regard, we note that section 262.110 of the Family Code specifically authorizes an authorized representative of the Department of Protective and Regulatory Services or a law enforcement officer to take temporary possession of a child without a court order "on discovery of a child in a situation of danger to the child's physical health or safety when the sole purpose is to deliver the child without unnecessary delay to the [person] . . . who is presently entitled to possession of the child." TEX. FAM. CODE ANN. § 262.110(a) (Vernon Supp. 2000). For purposes of section 262.110, which is also located in title 5 of the Family Code, a "child" is defined as "a person under 18 years of age who is not and has not been married or who has not had the disabilities of minority removed for general purposes." *Id.* § 101.003(a) (Vernon 1996).

The Police Department also asks if officers would be authorized to use force to take possession of a missing seventeen-year-old. We assume that this question pertains to use of force against the child rather than some third person who may have absconded with the child. We conclude that an officer may use force to detain a missing child who wishes to elude protective custody, but only to the degree the officer reasonably believes is necessary to safeguard or promote the child's welfare consistent with the protective purpose of article 63.009(g).

We believe that the use of force in this situation would be governed by section 9.61 of the Penal Code, a provision of chapter 9 of the Penal Code, which governs use of force for purposes of the criminal law. Section 9.02 of the Penal Code provides that "[i]t is a defense to prosecution [for use of force] that the conduct in question is justified under this chapter." TEX. PEN. CODE ANN. § 9.02 (Vernon 1994). Under chapter 9, confinement, *i.e.* detention of a person for purposes other than arrest, constitutes use of force. *See id.* § 9.03. Chapter 9 contains various provisions governing use of force by law enforcement officers. *See, e.g., id.* §§ 9.51-.53. As these provisions deal with use of force in the context of arrests, searches, custody following an arrest, and prisons, they are

inapplicable here where we consider use of force to take a child into protective custody. Rather, section 9.61 of the Penal Code provides that the use of force, but not deadly force, against a child younger than eighteen years is justified under certain circumstances, specifically:

> (1) if the actor is the child's parent or stepparent or is acting in loco parentis to the child; and

> (2) when and to the degree the actor reasonably believes the force is necessary to discipline the child or to safeguard or promote his welfare.

*Id.* § 9.61(a)(1), (2). For purposes of section 9.61, "in loco parentis" includes a "grandparent and guardian, any person acting by, through, or under the direction of a court with jurisdiction over the child, and *anyone who has express or implied consent of the parent or parents.*" *Id.* § 9.61(b) (emphasis added); *see also id.* § 9.62 ("The use of force, but not deadly force, against a person is justified: (1) if the actor is entrusted with the care, supervision, or administration of the person for a special purpose; and (2) when and to the degree the actor reasonably believes the force is necessary to further the special purpose or to maintain discipline in a group.").

Section 9.61 applies to use of force against a child (i) to discipline the child or to safeguard or promote the child's welfare, *see id.* § 9.61(a)(2), (ii) by the parent or person acting in loco parentis, which is broadly defined to include any person acting with the parent's implied or express consent, *see id.* § 9.61(a)(1), (b). Again, the purpose of chapter 63 of the Code of Criminal Procedure is to locate missing children, to ensure their safety, and to reunite them with their parents or guardians. Thus, we believe that an officer who takes possession of a child under article 63.009(g) does so to safeguard or promote the child's welfare within the meaning of section 9.61. *See id.* § 9.61(a)(2).

The more difficult question is whether an officer has parental consent to use force against the child for purposes of section 9.61. *See id.* § 9.61(a)(1), (b). Based on the statutory scheme, we conclude that a parent or guardian who reports a child as missing consents to use of reasonable force against the child. First, we believe it is clear from the statute that an officer who locates a child who has been reported as missing by a parent or guardian has the express consent of the parent or guardian to confine the child. The very act of reporting a child as missing triggers the mandatory duty in article 63.009(g) (and article 2.13(c)) that an officer who locates the child take possession of the child. This duty includes the duty to keep the child in the officer's possession until the person entitled to possession or the Department of Protective and Regulatory Services representative arrives. Again, if the child does not wish to stay with the officer, the detention will constitute confinement, a use of force. *See id.* § 9.03. Furthermore, we believe that a parent or guardian who reports a child as missing must reasonably anticipate that use of some force may be necessary to take physical possession of a child who does not wish to be taken into protective custody. For this reason, an officer who locates a child who has been reported as missing by a parent or guardian has the implied consent of the parent or guardian to use force to take physical possession of the child.

Accordingly, we conclude that section 9.61 would generally apply to an officer who takes possession of a child under article 63.009(g). Thus, such an officer is justified in using force "to the degree the [officer] reasonably believes . . . is necessary . . . to safeguard or promote [the child's] welfare." *Id.* § 9.61(a)(2). Clearly an officer who locates a child who has been reported as missing by a parent or guardian would be justified in confining the child until the person entitled to possession or the Department of Protective and Regulatory Services representative arrives. We caution, however, that although article 63.009(g) clearly contemplates confinement of an unwilling child, the child is not under arrest, and it would not be appropriate for a law enforcement officer to place a missing child in a jail or with persons under arrest for crimes or juvenile misconduct. *Cf.* TEX. FAM. CODE ANN. § 262.108 (Vernon Supp. 2000) ("When a child is taken into possession under [chapter 262 of the Family Code, which provides for taking children into protective custody in certain situations,] that child may not be held in isolation or in a jail, juvenile detention facility, or other secure detention facility.").

In addition, use of force greater than confinement may be justified in some circumstances to take physical possession of a child. We stress, however, that the purpose of taking possession of a child under article 63.009(g) is to protect the child, who, presumably, has not committed an offense and is not under arrest. We believe that a trier of fact would consider whether the degree of force was reasonable in light of the protective purpose of article 63.009(g). Moreover, while we have focused our analysis on criminal liability for use of force, the reasonableness of the use of force would also be an important factor in the context of a civil suit under state or federal law arising from the use of force under article 63.009(g) and would be considered in light of the protective purpose of the statute. *Cf. Thompson v. City of Galveston*, 979 F. Supp. 504 (S.D. Tex. 1997) (to sustain cause of action under Fourth Amendment that officers used excessive force to take child into custody under chapter 52 of the Family Code, plaintiff must establish that use of force was "objectively unreasonable"); *Hudson v. Vasquez*, 941 S.W.2d 334, 337 (Tex. App.–Corpus Christi 1997, no writ) (reasonableness of force used in making an arrest an element of determining whether law enforcement officer is entitled to official immunity under state law); *id.* at 338-39 (whether law enforcement officer is entitled to official immunity in action under 42 U.S.C. § 1983 for use of force in making an arrest depends in part upon reasonableness of force used). In the final analysis, however, the determination whether the degree of force used in a particular case is reasonable depends upon the circumstances and is beyond the purview of an attorney general opinion.[11]

Finally, the Police Department notes that article 63.010 of chapter 63 of the Code of Criminal Procedure provides that "[t]he Attorney General shall require each law enforcement agency to comply with this chapter and may seek writs of mandamus or other appropriate remedies to enforce this chapter." TEX. CODE CRIM. PROC. ANN. art. 63.010 (Vernon Supp. 2000). The Police Department asks: "Would [the Office of the Attorney General] pursue an action against an agency that refused to detain a seventeen-year-old who had committed no crime and did not voluntarily

---

[11]*See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual determinations."); 0-2911 (1940) at 2 ("[T]his . . . presents a fact question which we are unable to answer.").

remain in police custody?" Police Department Letter at 2. Whether this office would undertake an enforcement action in any particular instance is an issue that is not amenable to an attorney general opinion.

## S U M M A R Y

Article 63.009(g) of the Code of Criminal Procedure requires a law enforcement officer who locates a seventeen-year-old who has been reported as a missing child to take possession of the child and to deliver the child to the person entitled to his or her possession or to the Department of Protective and Regulatory Services. The detention of an unemancipated seventeen-year-old against his or her wishes for the purpose of returning the child to his or her parent or guardian does not violate the child's constitutional rights. An officer may use force to take possession of a missing child, but only to the degree the officer reasonably believes is necessary to safeguard or promote the child's welfare consistent with the protective purpose of article 63.009(g).

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee